## MATSON vs. FIELD & CATHCART.

1. A Court of equity will not interfere by injunction to restrain a judgment at law, for causes which on a motion for a new trial at law had been held insufficient.

2. The neglect of a party to make his defence at law, is no ground for equity to interfere.

### APPEAL from St. Louis Circuit Court, (in Chancery.)

HOLT & BEATTY, *for Appellant,* contended:

1. Equity will not relieve against the inattention of parties in a Court of law, as by neglecting a proper defence, or to move for a new trial in proper time. 1 Mad. Chan. 77; Whea. 14; Ves. 28, and 1 Chan. Cas. 43, are referred to. See also *Barker vs. Elkins,* 1 John. Chan. Rep. 466.

2. No distinction can be made between the negligence of a party, and that of his attorney. *Field & Cathcart vs. Matson,* 8 Mo. Rep. 687.

3. On motion for a new trial, due diligence must be shown. *Wimer vs. Morris,* 7 Mo. Rep. 6; *Green vs. Goodloe,* 7 Mo. Rep. 27. The rule is the same at law and in equity. *Woodsworth vs. Van Buskirk,* 1st John. Chan. Rep. 432.

4. Eliza P. Grimes and her children, ought to have been made parties to this suit, the rule in equity being that all interested in the subject matter must be parties. Story Eq. Pl. 74; Mitford's Eq. Pl. 163-4.

5. Even if the complainants have made out a case for the interference of chancery, yet the decree of the Circuit Court goes too far. The Court ought, at most, to have ordered a new trial at law, and not have made a perpetual injunction.

LESLIE & LORD *for Defendants.*

1. Equity will relieve against a judgment obtained by accident, where there is no negligence or default of the party against whom it is rendered. Andrews vs. Fenter, 1 Ark. Rep. 186; Kincaid vs. Cunningham, 2 Munford 1. In Forshea & Sea, 4 Call. 279, it is said "a Court of equity will relieve when the common law gives no remedy, or judgment has been obtained by surprise or inadvertence." In Click vs. Gillespie, 4 Haywood 7, it is said, "in Tennessee the Courts of Chancery will grant relief to a defendant when he has a good defence at law, but by some mistake of his counsel was prevented from availing himself of it." See also Tucker's Commentaries, vol. 2, p. 472, 475, 476, and 477, and the cases there cited. 4 Mun. 469; 6 ib. 291; 2 Wash. 41.

2. The Circuit Court did not err in refusing to let Eliza P. Grimes in to answer.

3. The decree is regular under the rules and practice of the Courts of Chancery of this State. See Practice in Chancery R. S. It is said in the English books of practice, "if the defendant makes default by not appearing, &c., &c., plaintiff is entitled to *a decree nisi,* to become absolute at the next term," &c. Now this is precisely the decree meant by our statute; the giving it a new name will not effect it—*it is a decree nisi in its nature and effect.* Smith's Chan. Pr. vol. 1, p. 416. "An interlocutory decree is properly a decree pronounced for ascertaining matter *of fact, or law,* preparatory to a final decree," &c. Seaton's Decrees, p. 2; 1 Hoffman Chan. Pr. 501; 1 Barbour's Pr. 326; Kane vs. Whittick, 8 Wendall 224. Section 12, of article 2, of the act concerning Practice in Chancery, R. S., p. 841, provides, "if they (demurrers) are overruled the defendants shall pay costs, and shall file his answer *instanter,* or in default thereof so much of the bill as remains unanswered shall be taken as confessed."

4. The plaintiff in the judgment in the common pleas, James S. Matson, was the only proper party to the bill as defendant.

SCOTT, J., *delivered the opinion of the Court.*

This is the case reported in the 8th Mo. Rep. 686, of Field & Cathcart vs. Matson. After the judgment against Field and Cathcart had been affirmed in this Court, they on the very same grounds which are reported in the said case, and on which they in the first instance applied to the Court of Common Pleas to set aside the judgment and grant a new trial, by a bill in equity, applied to the Circuit Court of St. Louis county, for a perpetual injunction restraining all proceedings by Matson under his judgment against Field and Cathcart. The bill was demurred to for the want of equity, and the demurrer was overruled. The defendant, Matson, failing to answer, a decree was entered against him perpetually restraining him from enforcing his judgment against Field and Cathcart.

If the Circuit Court had barely granted a new trial, there would have been some semblance of justice, if not of law, in its proceedings. But by perpetually restraining Matson from the use of his judgment, he was sent away without redress, totally unheard. A plaintiff brings an action at law against a defendant, he takes a judgment by default, which is matured into a final judgment. An application is made to set aside the default, and grant a new trial. The motion is overruled, and the judg-

ment overruling that motion is affirmed in the Supreme Court. After-
wards the defendant, on no other grounds than those on which he applied
for relief to the Courts of law, goes into equity and obtains a perpetual
injunction to the judgment. The bare statement of this case, is sufficient
to show how irreconcilable it is to all principle. As there had been no
trial at law on the merits, it is obvious that if a Court of equity inter-
fered at all, it should have again permitted a litigation of the rights of
the parties in a Court of law.

In what a situation is this Court placed by this proceeding. This
question has once been determined here, and now upon the very same
grounds upon which it has once been decided, we are called upon to
decide it again. *Inter est reipublicæ ut sit finis litium.*

But no principle is clearer than that a Court of equity had no authority
to interfere in this case. Various cases have been cited from the Vir-
ginia Reports in order to warrant the exercise of the power assumed by
the Circuit Court; and Tucker's Commentaries have also been relied on
in support of this decree. Tucker, after a lucid review of the cases in
which new trials had been granted in equity after a judgment at law,
concludes by saying, "it will have been observed from the cases hereto-
fore cited, that the interference of a Court of equity in granting a new
trial, arises only from the inability of the party to make his application
to a Court of law; for if he has made it, and it has been refused, it cannot
be successfully renewed in equity on the *same* ground; and if he has
failed to make it, when he might have done so, he is entitled to no relief.
That it is obvious that a Court of equity substitutes itself for a Court of
law, and in all such applications the Court of equity should adopt the
principles and rules of the Court for which it is substituted." In the
case of Bateman vs. Welloe, 1 Schoale's and Lefroy's Rep. 201, when
an injunction was applied for, on the ground that the plaintiff's demand
was unconscientious, and where a verdict had been obtained against a
defendant who had neglected to apply for a new trial within the time
appointed by the rules of the Court of law, Lord Redesdale observed,
"it is not sufficient to show that injustice had been done, but that it has
been done under circumstances which authorize the Court to interfere;
because if a matter has already been investigated in a Court of justice,
according to the common and ordinary rules of investigation, a Court of
equity cannot take on itself to enter into it again. The inattention of
parties in a Court of law can scarcely be made a subject for the interfer-
ence for a Court of equity. Unless a verdict has been obtained by fraud,
or a party has possessed himself improperly of something by means of which

he has an unconscientious advantage at law, which equity will either put out of the way or prevent him from using, equity does not interfere to grant a trial of a matter which has already been discussed in a Court of law, a matter capable of being discussed there, and over which the Court of law had full jurisdiction." So in the case of Simpson vs. Hart, 1 John. Chan. Rep. 97, Chancellor Kent held, "that where Courts of law and equity have concurrent jurisdiction over a question, and it receives a decision at law, equity can no more re-examine it than Courts of law, in a similar case, could re-examine a decree in the Court of Chancery.

That the principle that a matter once considered and decided by a competent tribunal, shall not be reviewed by any other tribunal having concurrent power except in the regular course of error or appeal, does not rest on the mere technical form of the decision. It is the unfitness and vexation and indecorum of permitting a party to go on successively, by way of experiment, from one concurrent tribunal to another, and thus introduce conflicting decisions. The principles of this case were fully acknowledged on an appeal in the Court of errors, although the decree on other grounds was reversed. Judge NAPTON concurring, the decree is reversed and the bill dismissed.