## PAYNE V. BILLINGHAM.

1. EXECUTION: MONEY. Where a sheriff foreclosed a mortgage in the summary manner provided by section 118 of the Code of 1851, and after the satisfaction of the mortgage debt retained a balance in his hands belonging to the mortgagor, it was held that under section 1910 of the Code, such overplus could be legally applied on executions against the mortgagor, then in the hands of the sheriff.

2. SAME: DELAY IN THE SALE OF PROPERTY. Where personal property was levied upon under an execution, and the sale postponed for fifteen months, at the instance and for the benefit of the defendant, it was held that the validity of the sale, *as between the parties*, was not affected thereby. *Aliter* as to other creditors of the defendant.

3. LEVY: UNCERTAINTY IN DESCRIPTION. The return of the sheriff on the execution described the property levied upon as " a lot of lumber consisting of fencing, flooring, sheeting, studding, siding, &c., as the property of the defendant;" *held*, that the levy was invalid for want of precision and certainty in the description.

4. SAME. The return should describe the property levied upon with such reasonable certainty that the purchaser can thereby find and identify the same.

5. SAME. A qualified consent by the defendant to the removal, by the purchaser, of property sold in irregular proceedings under execution, may operate as a waiver of the tort, without affecting his right to recover the value of the property thus taken.

6. INSTRUCTIONS. A court can not be required to repeat instructions already given to the jury.

7. REMITTITUR. The appellee may remit in this court an excess in the judgment below, and take judgment for the true amount. The costs of the appeal should be taxed to the appellee.

*Appeal from Powesheik District Court.*

TUESDAY, APRIL 10.

THE facts are stated in the opinion of the court.

*Wm. Loughridge* for the appellant, to the point that the application of the surplus remaining after the satisfaction of the mortgage debt to the execution against plaintiff was valid, cited *Hendry* v. *Dobbin*, 12 John. 220 ; 1 Cranch 117; *Dawson* v. *Holcombe*, 1 Ohio 275 ; 3 Mass. 295 ; 3 Scam. 452 ; that leaving property unsold after levy, does not vitiate

the sale when made, as between the parties, *Leroy* v. *Wallis*, 4 Dal. 168; *Chancellor* v. *Phillips*, 4 Ib. 213; 20 Penn. 115; *Snipes* v. *The Sheriff*, 1 Bay. 295; *Linendal* v. *Doe*, 14 John. 222; *Remington* v. *Lincethum*, 14 Pet. 84; that unreasonable delay would render it void as to other judgment creditors, *Whipple* v. *Foot*, 2 John. 422; *Doty* v. *Turner*, 8 Ib. 20; *Storm* v. *Beekman*, 11 Ib. 110; *Russell* v. *Gibbs*, 5 Cow. 392; *Ball* v. *Shell*, 21 Wend. 222; *Phillips* v. *Dana*, 3 Scam. 557; *Bliss* v. *Ball*, 9 John. 132; *Owens* v. *Patterson*, 6 B. Mon. 488; that the acquiescence of the defendant in the sale and removal of the property must operate as an estoppel, *Doe* v. *Oliver*, 2 Smith's L. C. 448; Am. notes on "*Estoppel in pais;*" 9 Wend. 147; 20 Conn. 18; *Lucas* v. *Hart*, 5 Iowa 415; 20 Penn. 115.

*Seevers, Williams & Seevers* for the appellee, as to the requisites of a valid levy, cited *Beekman* v. *Lansing*, 3 Wend. 446; *Haggerty* v. *Webber*, 16 John. 287; *Hill* v. *Harris*, 16 B. Mon. 120; *Westervelt* v. *Pinckney*, 14 Wend. 123; 19 Wend. 495; 2 Hill 666; 5 Denio. 198; 16 John. 287; Gwyne on Sheriffs 210–12, and the authorities there cited. The seizure and conversion of defendant's goods and property, without legal authority, renders the defendant liable. *Prescott* v. *Wright*, 6 Mass. 643. The purchaser at a sheriff's sale depends for his title on the judgment, levy and deed. *Wheaton* v. *Sexton*, 4 Wheat. 520. Minor questions were presented and discussed, but as they were not determined in the opinion of the court they are not reported.

Lowe, C. J.—Suit by Payne against Billingham, claiming of him $1500, for tortiously taking and appropriating ninety-five thousand feet of lumber to his, the defendant's, use; also for $300, being the value of lumber sold and delivered to defendant; $300, being the value of lumber belonging to plaintiff which the defendant had sold, and received the proceeds thereof; and $127, being money received by defendant for plaintiff's use.

Defendant denies the indebtedness and denies the tort, but admits that he took a part of the lumber first above stated; yet justifies the act by virtue of a purchase at a sheriff's sale under an execution, which had been issued upon a judgment for $840.32, which the defendant had obtained against the plaintiff. The execution was levied upon the lumber first above described on the 8th day of August, 1857, and it was advertised for sale on the 4th of September following. The sale was postponed, as defendant claims, at the request of plaintiff, and under an agreement that the levy should remain and the property be advertised and sold at a subsequent time, when the defendant should think proper. The property upon the old levy was again advertised, and was sold on the 4th day of November, 1858, to defendant, as the highest bidder, for the sum of $181.40; by virtue of which purchase the defendant admits that he did take and carry away a part of the lumber so sold, but with the permission and acquiescence of the plaintiff, who, he claims, ratified the sale; also that the sheriff with an execution issued upon the judgment aforesaid, did levy upon $133.76 in money, being bank bills and gold; and of that sum paid to defendant $127, being the same money mentioned in the third count of plaintiff's petition. Defendant also claims that about the first of September, 1858, he paid plaintiff $400, in full for all lumber sold and delivered to him, and that he had received on two executions against plaintiff, $1,000 for lumber, which he had indorsed on said executions, which said several credits were so indorsed on said executions with and by the consent of the plaintiff. Defendant also claims a set-off of $100 for money loaned, and paid to plaintiff for lumber, pickets and corn which were never delivered. Also a set-off of $250, being the value of lumber belonging to defendant and wrongfully taken by the direction of plaintiff. All of which plaintiff's replication denies. Trial, verdict and judgment in favor of plaintiff for $750.52. Defendant brings the cause to this court upon appeal, and assigns for error:

1st. That the court erred in giving certain instructions and

in refusing others. 2d. In overruling the questions asked the witness Moody. 3d. That the verdict of the jury was against law and evidence. 4th. In overruling the motion for a new trial.

Finding no well grounded objection to the instructions except as to those of which the counsel complains in his argument we shall limit our examination to the following :

The first is as follows : "That under the evidence the plaintiff will be entitled to recover the sum of $133.76, (being money received by the sheriff from the sale of plaintiff's property under the foreclosure of the mortgage of Clute) if you believe from the evidence that the sheriff paid said money to defendant and that defendant had full knowledge from what source said money was obtained." Whilst the sheriff had in his hands an execution against the plaintiff and in favor of the defendant, he was required, under the summary provisions of the Code, to give notice and sell certain mortgaged premises of the plaintiff to satisfy a claim which one Clute held against the plaintiff. The sale was made and there was an excess of $133.76 over and above the mortgage debt. This sum the sheriff levied upon with the execution aforesaid, and without sale, after deducting his costs, credited the execution with $127, which he afterwards paid to plaintiff on execution. If he could legally do this, and we hold that he could, then it follows that the foregoing instruction was erroneous and should not have been given. Outside the Code the weight of authority is against such an application, and is founded upon the general principle that the money under such circumstances is in the custody of the law, not the subject of a levy, but must first be paid to the party whose property had been sold. It is clear to our mind that the Code has changed this rule. Section 1910 provides that "when property sells for more than the amount required to be collected, the overplus must be paid to the defendant, unless the officer has another execution in his hands on which said overplus may be rightfully applied." If under an execution sale the excess may thus be applied, we do not see

why under the liberal construction which we are to give to the provisions of the Code, a similar application could not be made in the case of a sale of mortgage property. See also, Code, sections 1893, 1914.

The following instruction was also given, to which an exception was taken: "The sheriff had no authority to sell the lumber under the execution offered in evidence, and the defendant got no title to said lumber by virtue of his purchase at said sheriff's sale, and the defendant's purchase of said lumber at said sheriff's sale did not justify defendant in taking and carrying away said lumber." Some fifteen months elapsed between the levy and sale. This long postponement of the sale, made at the instance and for the benefit of the defendant in the execution, did not effect the validity of the sale as between the parties. As the property was left in the possession of the execution defendant, with power to sell and use it as his own, a third party might have levied upon it and held it, but it was not competent for the plaintiff in this case, under the circumstances to object to the delay. Yet there was a fatal defect in the sale which was not waived or cured by any act of the defendant in the execution. We allude to the levy itself, which was void from sheer want of precision and certainty in the description of the property taken. According to the return upon the execution, the sheriff "levied upon a lot of lumber consisting of fencing, flooring, sheeting, studding, siding, &c., as the property of B. O. Payne." By the same description it was advertised for sale. The sheriff testified in this cause, and stated that he intended to levy on 40,000 or 50,000 feet of lumber. It is claimed that there was some 200,000 feet of lumber in the same yard. The lumber so levied upon was left in the possession of the defendant in the execution, with permission to sell the same at private sale, and pay the proceeds thereof on the execution. Lumber was sold and several hundred dollars were paid and credited upon the execution. Whether these private sales were made from the lumber levied upon, is not very clear from the evidence.

Payne v. Billingham.

Some fifteen months after the levy, the sheriff advertised and sold at public outcry, some 72,000 feet of lumber, supposed to be the same that was levied upon, although it had been in the meantime removed a mile, or more, from the place where the levy had been made.

To uphold such a proceeding would be a mockery of the rights of the debtor. Had the property been sold by the same description under which it was levied upon, and advertised, what could the purchaser claim by his purchase? How could he identify the quantity to which he was entitled under the sale. It will hardly be pretended that the levy should not describe the property taken with a certainty that would enable either the successor of the officer, if one should be appointed in the meantime, or the purchaser at the sale, to find and identify the property. This could not have been done in the present case, and whilst it is always better for the officer to make an inventory of personal property levied upon, we do not insist that this is indispensible to the validity of the levy. But it is necessary in a levy upon lumber to describe the quality and quantity, and so to designate its locality and position with reference to other lumber in the same yard that it could with reasonable certainty be identified. This the sheriff altogether failed to do. It follows that the levy being void from uncertainty, the proceedings under it were nullities; and the instruction objected to was properly given to the jury.

It was claimed that the plaintiff below acquiesced in, or ratified the sale, by agreeing to assist the defendant to haul away his lumber. The evidence, to our mind, shows that the plaintiff waived the tort or trespass, by his acts, but not his right to demand and recover the value of the lumber so taken. It is true, when the defendant informed him after the sale, that he had purchased the lumber, plaintiff replied, "that was all right," but added at the same time that he, the defendant, should, or ought to pay him more than the bid. The assent given was not without a qualification, besides it does not appear that the plaintiff fully comprehended his

own position, or rights. The two instructions given by the court upon this branch of the case, are not very clear or satisfactory, but as we read and interpret them, we do not perceive the errors complained of. We confess, however, that this feature of the case possesses its greatest difficulty. But after putting all the facts carefully together, we can not bring ourselves to the conclusion, that there was such a ratification of this illegal sale by the plaintiff as to estop him in law from recovering the value of the lumber taken.

The court refused to give the following instruction, which refusal is assigned as error: "The fact that the amount included in the sheriff's sale was 72,000 feet is not sufficient to show that defendant received that amount. Defendant is not answerable for any but what he received." The substance of this instruction had already been given once or twice to the jury, and although repeating it again would not have been erroneous, still we do not think a court is bound to repeat the same instruction, in effect, a number of times to the jury, nor do we believe in view of the other instructions given, the rights of the defendant were prejudiced by the refusal of this instruction.

Again, it is stated that the court erred in sustaining the objection made by plaintiff below to the cross examination of the witness, Moody. The bill of exceptions does not show that this objection was made, nor does it show whether the court overruled or sustained the same. We are therefore unadvised by the the record of the action of the court in the premises.

The motion for a new trial was made, in the main, upon the errors assigned and now considered, and was properly overruled, as to all the reasons contained in the motion, except the third, which was, *"that the damages were excessive and more than was authorized by the evidence."* This was true, so far as it related to the $127.00, which by order of the court was erroneously permitted to enter into and form a part of the damages claimed by the plaintiff; and for this a new trial should be granted, unless the plaintiff below offered

to do (of which there is no evidence,) what he proposes to do here—enter a *remittitur* for this excess. This offer makes it unnecessary to reverse and remand the cause for this error. A judgment will be entered in this court for the amount of the judgment below, less the $127.00; and the costs of the appeal will be taxed to and recovered of the appellee.