JAMES DUNN, JR., ADMINISTRATOR OF THE ESTATE OF PRES-
TON B. REED, AND PATRICK EWING, Defendants in Error,
v. ROBERT C. HANSARD, Plaintiff in Error.

1. *Equity—Injunction—New Trial.*—A party who has failed to make his de-
fence to a suit at law, and seeking the interposition of a court of equity,
must show some substantial ground of relief which will bring the case un-
der some head of equitable jurisdiction; such as fraud of the opposite party,
uncontrollable accident, or mistake, unmixed with negligence or fault on
his part. (Matson v. Field, 10 Mo. 100.)

*Error to Callaway Circuit Court.*

*C. H. Hardin* and *H. C. Hayden,* for plaintiff in error.

*E. B. Ewing* and *Sheely,* for defendants in error.

HOLMES, Judge, delivered the opinion of the court.

This is a petition in the nature of a bill in equity to re-
strain a judgment at law.  It appears that the plaintiff Reed
brought an action of claim and delivery against the defend-
ant Hansard for the possession of a negro slave, which was
seized and delivered over to him, upon his giving the usual
bond, with Patrick Ewing, the other plaintiff herein, as secur-
ity.  This suit proceeded in the Callaway Circuit Court un-
til a judgment was rendered against the plaintiff therein for
costs, which the defendant Hansard supposed to be a final
judgment, and a failure to prosecute the action.  Thereupon
Hansard brought a suit against Reed and Ewing upon the
bond, to which they answered, setting up as a defence that
the replevin suit was still pending undetermined, and the
plaintiff had judgment for costs only.  This judgment was
reversed in the Supreme Court, (Hansard v. Reed, 29 Mo.
472,) for the reason that the suit had been prematurely
brought, the suit in which the bond had been given not hav-
ing been finally determined.  In this latter suit the court be-
low, subsequently to the supposed final judgment, granted
the plaintiff leave to amend his petition, whereby the former
judgment was held in Hansard v. Reed to have been impli-

edly set aside and the cause reinstated in court. To this amended petition an answer was filed by the defendant, but at a subsequent term, on his motion the cause was stricken from the docket, and so far as the record shows no exception was taken by the plaintiff therein to that action of the court, and no further proceedings appear to have been had in the cause. In the meantime Hansard had dismissed his original suit upon the bond, and brought another suit thereon against the same defendants. In this suit service was made upon the defendant Ewing, but no service was had upon Reed. At the return term, as it appears by the record, leave was granted to the defendant to file an answer within sixty days before the next term, but it is not distinctly stated whether or not either defendant actually appeared by attorney or otherwise ; and at the next term thereafter, the record shows that the parties appeared by their counsel, and that there was a judgment by default, an inquiry of damages, and a final judgment rendered for the plaintiff for the sum of $1,080, damages and costs. The present suit was instituted for the purpose of enjoining the execution of this judgment, an injunction was granted, and a final decree entered making the judgment perpetual. The decree finds as facts "that the judgment sought to be enjoined was obtained by defendant in this cause against the plaintiffs Reed and Ewing, at the April term, 1863, of this court, on a bond given by the present plaintiff for the return of a negro, which by the sheriff under writ issued by the clerk of this court, in a certain cause then pending in this court, by the children of defendant Hansard, by their curator Reed, against said Hansard, and which was commenced in 1855 ; that Reed resigned his curatorship of the wards, and the petition was amended in their name by their present curator, Jefferson F. Jones, which said suit was improperly stricken from the docket at the April term, 1861, of this court, and is in fact still pending, and so remains undisposed of at this time. The court finds that the suit on the bond in which the judgment was rendered now sought to be enjoined, was commenced on the 9th of

February, 1861, and that the plaintiff Reed, defendant in that suit, was never served with process; that he never entered his appearance therein, or authorized any one to enter his appearance for him, and that Ewing was laboring under the belief that he had nothing to do with any suit on the bond until the said suit of the children of Hansard by their curator Jones should be determined, and that he was surprised and misled as to the nature of said suit and the judgment so rendered against him, and that he was mistaken and misled in supposing that Jones and Boulware were his attorneys, when in fact they were not; and also finds that the fact that the said judgment was rendered against him—till after the final adjournment of the court, and that he had a meritorious defence.    The court further finds that there was no regular term of this court held in this county from April, 1861, till April, 1863, and that no default was taken in said cause of Hansard v. Reed and Ewing at any time till the April term, 1863, of this court, when the default was entered against Reed and Ewing, and at the same time the final judgment in the cause was rendered, and is the judgment now sought to be enjoined."

It appears in evidence that the defendant Ewing, on whom regular service was made, called upon the curator Jones, and was told that no suit could be maintained against him on the bond while the other suit was still pending, and that he gave himself no further trouble concerning it; that he had attorneys employed in other cases, but it did not clearly appear whether or not any attorney had been specially engaged to attend to this case.    The record entries show that some attorney did appear, representing the parties defendant. It appears that Reed was personally present in court when the judgment was rendered, and protested against the proceedings, but took no part in them; nor did he take any action in the case afterwards.    No further steps appear to have been taken in the case at law.    There was no evidence to show any fraudulent action, or improper conduct, on the part of the plaintiff.

It is quite extraordinary that under these circumstances no motion for a new trial was ever made in the case, nor any steps taken to bring the matter before the court below on motion or otherwise, for the correction of any error or irregularity in that judgment; and that the aid of a court of equity should now be invoked, not to get a new trial merely, but a perpetual injunction to restrain the party forever from any further prosecution of his cause of action. As in Matson v. Field, (10 Mo. 100,) the above statement of the case would seem to be enough to show how irreconcilable is this decree with any principle of law or equity. In that case there had been no appearance until after a judgment by default and a final judgment rendered upon an inquiry of damages at the next term afterwards; but a motion for a new trial, supported by affidavits, had been made fourteen days after the judgment was rendered. The motion was overruled, the party failing to show any such diligence, accident, or mistake, unmixed with negligence or inattention on the part of himself and his attorney, as would entitle him to a new trial, though having a meritorious defence; and this ruling was affirmed in this court in Field and Cathcart v. Matson (8 Mo. 686). The defendant then sought the aid of a court of equity by injunction, which was denied in this court in Matson v. Field, (10 Mo. 100,) and the court sanctioned the doctrine that " the interference of a court of equity in granting a new trial, arises only from the inability of the party to make his application to a court of law; for if he has made it and it has been refused, it cannot be successfully renewed in a court of equity on the same ground, and if he has failed to make it when he might have done so he is entitled to no relief;" and it was added further, that " it is obvious that if a court of equity interfere at all, it should have again permitted a litigation of the rights of the parties in a court of law." Now, if that judgment were erroneous there would be a remedy at law by writ of error, and if it were void for irregularity, or for want of service on either party, or for any other reason, there would be an adequate remedy by direct application to

the court below. The parties have never sought any remedy whatever in the case at law. This alone would be a sufficient reason for the refusal of a court of equity to interfere for their relief. It must be something more than mere inattention, ignorance, or negligence, that has prevented the party from availing himself of his defence at law. There must be some substantial ground for relief, which will bring the case under some head of equitable jurisdiction ; such as fraud of the opposite party, uncontrollable accident, or mistake, unmixed with negligence or fault on his own part. (Foster v. Wood, 6 John. Ch. 89 ; 2 White & Tud. Lead. Cas. in Eq., Pt. 2, pp. 97, 102.) Nothing appears in the conduct of the plaintiff which can be held to amount to fraud ; nor does the evidence show any such accident or mistake as will furnish a ground for relief in equity. On the contrary, though there is some evidence that the parties or their attorneys were laboring under some misapprehension as to the final determination of the other suit, or as to their rights and duties in the premises, it appears, on the whole, that the result was due rather to their own negligence and inattention than to any other cause. It is clearly not a case of accident or mistake unmixed with negligence or fault on their part ; and in this respect no difference can be made between the parties and their attorneys. (8 Mo. 686.) It is not enough for a party who is regularly served with legal process, to rely upon his own vague impressions as to the nature of the suit, or upon casual inquiries and uncertain reports. Due diligence would require at least that he should place the copy served in the hands of some attorney, (if he did not propose to appear and plead in person,) and make such an engagement as would leave no room for doubt about the employment of counsel, or the responsibility which counsel assumes when so employed.

The judgment will be reversed and the petition dismissed. The other judges concur.