WENDELIN MILLER AND WIFE, Appellants, *v.* JOHN L. BERNECKER, Respondent.

1. *Res adjudicata — Judgment affirmed in Supreme Court for failure to assign errors.*—Where a motion to set aside a sale of land is appealed to the Supreme Court, and for want of assignment of errors the action of the lower court is affirmed, parties are concluded by its disposition; and in event of subsequent proceedings instituted for the same purpose, equity has no power to relieve them.

*Appeal from St. Louis Circuit Court.*

*S. Reber* and *P. C. Morehead*, for appellants.

*R. S. McDonald*, for respondent.

BLISS, Judge, delivered the opinion of the court.

This suit presents another phase of the controversy involved in the proceedings before us in Bernecker v. Miller, 44 Mo. 102. It is a proceeding in equity to enjoin the judgment in ejectment then affirmed. The fraudulent conduct of Bernecker in obtaining the judgment in partition in the Court of Common Pleas, described in Bernecker v. Miller, 44 Mo. 102, and in purchasing the land, is set forth in the petition as the ground for equitable relief. We held, when that case was before us, that the judgment could not be impeached collaterally, and this is an attempt to

show, by a direct proceeding, such fraud in obtaining it that the court will prevent its execution. The petition sets forth the proceeding in the Land Court for partition instituted by Peterson and wife, and also the proceeding in the Court of Common Pleas by Bernecker, and alleges that the last proceeding was without the plaintiffs' knowledge; that if they were served with process, they did not understand its meaning; that they were ignorant and illiterate, neither understanding legal documents and proceedings, nor the English language, but that Bernecker was a shrewd and intelligent man, speaking both English and German. It also shows that after the service of process in the Peterson case, they relied on their brother-in-law, Bernecker, to advise them and take the proper steps to protect their interest in the land, and he, knowing their ignorance and confidence in him, undertook to do so, but, after the institution of the Peterson suit, conceived the design of obtaining their interest in the lands at a nominal price, by taking advantage of their ignorance and confidence in him, and in pursuance of said design instituted said proceedings in the Court of Common Pleas, and they, trusting to him to represent them, gave no heed to the matter; and he, in pursuance of his design to defraud them, concealed from them his proceedings, obtained the order of sale, and bid in the land at $5 per acre, when it was worth $100. It also shows that they were wholly ignorant of all those proceedings, and never, in fact, appeared in the suit or authorized any one to appear for them, but trusted wholly to Bernecker to represent them in the matter of dividing the land, and that they did not receive any part of the money, and have ever since kept possession.

The answer denies these allegations, but the evidence sustains them, and shows that the plaintiffs and some of the other heirs were wholly ignorant of what was going on; that they did not know that they were served with process in the proceedings in the Common Pleas, or that there were any such proceedings, until after the sale, and authorized no one to appear for them; that the land, at the time of the sale, was worth from $80 to $100 an acre; that Wendelin Miller was very ignorant and illiterate, and he and his wife trusted Bernecker to manage their interests in the lands,

who encouraged them to do so. Two witnesses testify that when reproached after the sale for not telling the plaintiffs and other heirs about it, he replied that he would be a jackass to tell them when he could make something for himself by it.

I have no doubt that enough is shown in this case to authorize a perpetual injunction, unless the plaintiffs are barred by some previous action or opportunity. But, unfortunately, it appears that after the heirs, including the present plaintiffs, had heard of this sale they then employed attorneys to apply to the court to set it aside, and accordingly a motion was filed and heard in said Court of Common Pleas stating many of the grounds set up in this petition and supported by affidavits, which, strange to say, was overruled. An appeal was taken to this court, and for want of an assignment of errors the action of the Common Pleas was affirmed. (32 Mo. 231.) Defendant, Bernecker, sets up this proceeding as a bar to any further investigation into his operations for transferring this estate. So far as that motion covers the equities of this petition, the plaintiffs are concluded by its disposition, notwithstanding it was never presented to the appellate court. That it was not so presented was the fault of plaintiffs' counsel at the time, from the effect of which equity has no power to relieve them. (Sto. Eq., § 895–6, and cases cited ; Matson v. Field, 10 Mo. 100 ; Reed's Adm'r v. Hansard, 37 Mo. 199.)

The great wrong which Bernecker has been enabled to practice upon the plaintiffs and the other heirs, has disposed us to give the most favorable consideration to their claims, both now and when they were before us in another form, as reported in 44 Mo. It did not appear in that record that this motion to set aside the sale was ever made, or that they made any other appearance in the Court of Common Pleas than what was indicated in the order of sale. But they actually did appear, and presented an application which ought to have been granted, and which doubtless would ultimately have prevailed had the matter been prosecuted in this court. That it was not so prosecuted was the fault of the attorney they selected, and after they had discovered the practices of Bernecker and were no longer deceived by him. The main facts set out in this petition were embodied in that motion, and

we must ignore every principle of jurisprudence to treat the matter as an open one. If the failure to prosecute this motion had been the result of fraud, or any other cause cognizable in equity, then we should have jurisdiction and could grant relief. But without it, it is not sufficient to show that the parties once had a case, if it also appears that by negligence they have lost their opportunity.

The judgment of the Circuit Court must be affirmed. The other judges concur.