WALTER S. STILLMAN, Appellant, v. JURGEN ROSENBERG and WIFE, Appellants, WILLIAM LARRABEE AND OTHERS and DAVID HENRY WATSON AND OTHERS, Interveners.

**Quieting Title;** DEED FRAUDULENTLY OBTAINED. Where plaintiff, who had no previous interest in certain real estate, discovering a defect in the affidavit on which the original notice was given in a suit to foreclose a mortgage thereon by publication, secured from the mortgagor a quitclaim deed on a fraudulent representation of his agent that it was wanted to fix up a title, and the mortgagor in executing such deed, believed that he was making the title of the purchaser at foreclosure good, and later executed a second quitclaim deed to the purchaser at such sale, in an action to quiet title, plaintiff had no rights under the deed so fraudulently obtained.

**Notice by Publication:** JURISDICTION. Where defendant conveyed lands, taking the purchaser's notes and mortgage, and foreclosed on failure of the purchaser to pay, and the affidavit on which the original notice by publication was made, stated that personal service could not be made on the purchaser "within this county," the word "county" being used instead of "state," as required by the statute, the court acquired no jurisdiction to render a decree of foreclosure, and a sale thereunder conveyed no title.

**Supplemental Decree:** PENDING APPEAL: *Jurisdiction.* In an action
to quiet title after an appeal is taken to the supreme court
from a decree of the district court in favor of plaintiff, and
giving him a day within which to pay money found due to
defendant, the district court has no right to proceed in the
case, and render a supplemental decree in favor of defendant
for plaintiff's failure to pay the money within the time.

*Appeal from Lyon District Court.*—HON. WILLIAM HUTCH-
INSON and GEO. W. WAKEFIELD, Judges.

MONDAY, MAY 14, 1900.

PLAINTIFF commenced this action in equity May 7,
1896, to quiet in him the title to a certain quarter section of
land in Lyon county. Issue having been joined, decree
was rendered August 19, 1897, quieting the title to said land
in the plaintiff on condition that he would, within sixty
days from date of said decree, pay into court the sum of
two thousand six hundred dollars and ninety-three cents,
with interest from the twenty-third day of April, 1897, to
the date of payment. On the following day—August 20,
1897—the defendant Rosenberg appealed from said judg-
ment and decree. On January 29, 1898, the defendant Lar-
rabee filed his motion asking a supplemental decree dis-
missing plaintiff's petition, and barring him from any
claim in said land, and for judgment against him for costs,
because of his having failed to pay said money into court,
as required by the decree. On the twelfth day of February,
1898, the motion was sustained, and a supplemental decree
rendered accordingly, and from the supplemental decree and
from the first decree the plaintiff, on February 14, 1898,
appealed.—*Reversed.*

*Parsons & Rinaker* for appellant.

*Geo. H. Stillman, Greenleaf & Greenleaf,* and *Hoopes
& Swearingen* for appellee Stillman.

*Chase & Dickson* and *Wagner & Miller* for appellee. Larrabee and Watson.

WATERMAN, J.—The pleadings are quite voluminous We shall not set them out, but will endeavor to present all the issues, as we proceed, in such a manner that the points ruled may be fully understood. The defendant Larrabee was the owner of the land in question, and on the eleventh day of October, 1883, through his agents, Miller & Thompson, sold it to the intervener Watson, of Chicago, Illinois, for one thousand seven hundred and ten dollars, receiving one hundred and fifty dollars in cash and the six promissory notes of Watson for two hundred and sixty dollars each, for the balance. Larrabee conveyed the land by warranty deed to Watson, and Watson and wife gave back their mortgage thereon to secure the payment of said notes. This transaction was consummated by correspondence between Miller & Thompson and a brother of Watson, acting for him. Watson never took possession of the land, nor made any further payment of the consideration, nor any payment of taxes. He moved from Chicago to Nebraska without advising Larrabee or his agents of his whereabouts; and Larrabee, concluding, from Watson's failure to take possession, or make payments, or assert any right to the land, that he had abandoned it, after default in the payments, took possession, and paid the taxes. Thus relying upon Watson's having abandoned the land, Larrabee contracted a sale thereof to the defendant Rosenberg on the first day of September, 1887, for two thousand two hundred and three dollars; two hundred and three dollars of which was paid in cash, the balance to be paid in installments as specified in the contract. Rosenberg took possession of the land, and has ever since held and used the same, has made valuable and lasting improvements thereon, and paid the taxes. Being unable to find Watson, so as to secure a reconveyance from him, Larrabee commenced his action on the eighteenth day

of April, 1899, against Watson and wife, on notice by publication, to foreclose said mortgage. On June 13, 1889, default was entered against Watson and wife, and judgment for two thousand six hundred and fifty-four dollars and eighty-two cents and decree of foreclosure rendered against them. July 26, 1889, the land was sold, under special execution issued on said decree, to the defendant Larrabee, for two thousand seven hundred and fifty-three dollars and thirty-six cents, and a certificate issued to him, in pursuance of which a sheriff's deed was executed and delivered to Larrabee on the thirty-first day of July, 1890. On the twenty-sixth day of September, 1892, Larrabee and wife, in pursuance of said contract, executed to Rosenberg a warranty deed for said land. On the twentieth day of April, 1896, Watson and wife, for a recited consideration of "one dollar and other valuable considerations," but in fact for the consideration of ten dollars, executed their quitclaim deed of said land to the plaintiff, Stillman. On the ninth day of September, 1896, Watson and wife executed another quitclaim deed to said land to the defendant Rosenberg for a consideration of one dollar. Each of the foregoing conveyances was filed for record, and recorded within a short time after their respective dates. The decree of foreclosure of the mortgage from Watson to Larrabee, and the sale and conveyance of the land thereunder, are only questioned in one particular. The affidavit upon which original notice by publication was made states that "personal service of original notice in said cause cannot be made upon the said David Henry Watson within this county;" the word "county" being used instead of "state," as required by the statute. The substance of the first decree herein, rendered by Hutchinson, J., is as follows: The court found that plaintiff is the absolute owner of the land, and entitled to be quieted in his title, as against the defendants and interveners, on condition that he pay into court, within sixty days from that date, the sum of

two thousand six hundred dollars and ninety-three cents, with interest from the twenty-third day of April, 1897, to the date of payment. It was ordered that, if he made said payment within the time aforesaid, the title should be forever quieted in him; and that, in case he failed to pay said sum within said time, "then, in the event of such failure, the plaintiff shall be barred of all right or claim in and to any part of said premises, and his petition in this case shall be deemed dismissed, and he shall be liable for the costs of this suit." It was found that Watson and wife had no right to the land. It was also found that there was due from the plaintiff to Larrabee, on the date of trial, four thousand nine hundred and twenty-three dollars and seventy-three cents, on the notes and mortgage of Watson, which it was decreed plaintiff must pay to redeem the land from said mortgage. It was found that there was due from Larrabee to Rosenberg, at the date of trial, as damages for a breach of the warranty upon the sale of the land, the sum of three thousand four hundred and seventy-seven dollars and fifty-three cents. It was found that there was due from Rosenberg to plaintiff, for the use of the land, after deducting for improvements and taxes, the sum of two thousand three hundred and twenty-two dollars and eighty cents. It was ordered that if plaintiff paid into court said sum of two thousand six hundred dollars and ninety-three cents, as required, one thousand four hundred and forty-six dollars and twenty cents thereof, with interest from the date of decree, be for the use and benefit of defendant Larrabee, and one thousand one hundred and fifty-four dollars and seventy-three cents, with interest from date of decree, be for the use and benefit of defendant Rosenberg. It was further ordered that the costs be deducted from the amount deposited for the benefit of Larrabee. The decree concludes as follows: "The court reserving jurisdiction of this case to make such other and supplemental decree

herein as may be required, either affirming this decree, in case the plaintiff pays into court the amount aforesaid, or dismissing the plaintiff's petition, and quieting the title in the defendant Rosenberg, in case of plaintiff's failure to so deposit."

II.    The plaintiff states his objections to the supplemental decree which was rendered by Wakefield, J., as follows: "*First,* that, an appeal having been taken from the original decree long prior to the rendition of the supplemental decree, the district court was deprived of all jurisdiction to render the latter decree; *second,* that the defendants, by taking an appeal, elected not to accept the money which was to be paid for their benefit, and that plaintiff was, therefore, excused from paying the same until the case should be finally determined in the supreme court; *third,* that the defendat Larrabee was not entitled to receive any of the redemption money, and hence had no right to complain of its nonpayment." In *Levi v. Karrick,* 15 Iowa 444, this court said: "That a chancery proceeding, when appealed from after a final decree, can be pending in this and the district court at the same time, subject alike to the control and action of either court, is against the whole theory of our system of jurisprudence. The simple matter of fact is that, when appeal is taken, all power of the court below over the parties and the subject-matter is lost until the cause, or some part thereof, is remanded back by order of this court for its further action." See, also, *McGlaughlin v. O'Rourke,* 12 Iowa, 459. It is insisted that because of the peculiar facts of this case, and because Rosenberg did not give a supersedeas bond, this rule does not apply. We think it is clear that by the appeal of Rosenberg the case was brought fully within the jurisdiction of this court, and that the district court had no further right to proceed in the case. The question whether the plaintiff was entitled to have the land by redeeming from the mortgage was involved in the issue between him and defendant Rosenberg, and

the mere fact that the decree in plaintiff's favor gave him a
day within which to pay the money did not reserve to that
court, as against the appeal, the right to proceed further in
the case.   We think plaintiff's first objection to that decree
is well taken, and for that reason the supplemental decree
is reversed.

III.   We now consider the case as presented on the
appeals of defendant Rosenberg and plaintiff from the
original decrees; and, first, whether plaintiff acquired title to
the land by the quitclaim deed from Watson subject
to the mortgage.   It is not seriously claimed that
Larrabee acquired any title through the foreclosure
decree and sale thereunder.   That decree was rendered with-
out the required notice, and, consequently, without juris-
diction, and was, therefore, void; hence, this case stands as
though those proceedings had not been had.   The title stood
in Watson, subject to his mortgage, and the plaintiff had
the undoubted right to acquire title, if he did so honestly.
The claim is that he procured it by fraudulently represent-
ing to Watson that his quitclaim deed was desired to perfect
the title to Larrabee and his grantee under the decree of
foreclosure of the mortgage.   There is no doubt but that
plaintiff, having discovered the defect in said affidavit for
publication of original notice in the foreclosure case, and
knowing its effect, quietly, shrewdly, and cunningly, and as
a matter of mere speculation, proceeded to procure the deed
from Watson. It appears that he employed detectives to ascer-
tain the whereabouts of Watson, and, finding the latter had
returned to Chicago, his address was secured, and plaintiff
sent a quitclaim deed to Mason Bross, an attorney of that
city, by mail, with instructions to call on Watson, and pay
ten dollars in money if he and his wife would execute it.
This deed, after describing the real estate, contained the
unusual provision that a right of action for trespass and
for rents and profits was also assigned to the grantee.   When
Bross went to Watson, he represented that the quitclaim

was wanted to vest a good title in some party who desired to purchase. Watson did not suppose he had any claim to the land. He made none, and was quite willing to aid those from whom he had purchased in making a good title. Believing that this was all that was wanted, he and his wife executed the conveyance without reading it. Watson testifies that he never would have made the deed had he supposed it was to be used in defeating the title of his grantors. These facts are practically undisputed, for Bross admits he told Watson the deed was wanted to "fix up" the matter. Watson had no substantial interest in the land that he cared to assert. Indeed, it is quite likely that his laches barred him from asserting any such interest had he desired doing so. *Horr v. French,* 99 Iowa, 73. But, aside from this last consideration, we think plaintiff gained no rights under this deed. Bross' representations were fraudulent, and, being the agent of plaintiff, the latter is bound thereby. This deed was not wanted to fix up a title, but to convey one to plaintiff. If Bross did not affirmatively and positively give Watson to understand that his (Watson's) grantors were interested in obtaining the conveyance, he certainly did so by manifest inference; and this was a fraud. A person may make a false representation by indirect as well as direct statements, and even by keeping silence when he ought to speak. The case of *Rollins v. Mitchell,* 52 Minn. 41 (53 N. W. Rep. 1020), is very similar in its facts to the case at bar, and sustains us in the conclusion that any interest acquired by Stillman under his deed from Watson is held only as a trustee for Rosenberg. See, also, Pomeroy Equity Jurisprudence, section 1053. It is by no means clear that Watson would have understood the clause in the deed assigning a right of action for trespasses and rents as in any way conflicting with the representations made him had his attention been called to the matter at the time he signed the deed. But, however this may be, the doctrine of *McCormack v. Molburg,* 43 Iowa, 561, and similar cases cited by plaintiff,

does not apply. It is not sought here to set aside this conveyance because of this provision. Watson and all other parties are quite willing it should stand just as made, for the purpose for which it was given. Rosenberg prays that his title be quieted against the claims of plaintiff. He is entitled to have this done. Plaintiff's petition will be dismissed, and all costs taxed to him on both appeals.— Reversed.