MINNIE BEVERING *et al.*, v. NANNIE M. SMITH, Appellant.

Recovery of Real Property: NEW TRIAL: TIME OF FILING APPLI-
1 CATION. An application for a new trial under Code, section 4205, relating to the recovery of real property, is limited to one year from the date of the court's final decision and not the return of the verdict.

New Trial. Code, sections 3755 and 4205 provide for a new trial
2 in distinct and different proceedings and the denial of application for a new trial made under the former section, is not a bar to one under the latter.

Same: Affirmance on appeal of a judgment of the district court
3 merely because of appellant's failure to file his abstract in time, is in effect a dismissal of the appeal, and while it is a finality as to all questions before the court, yet where the affirmance adds nothing to the existing judgment, it is not a bar to an application for a new trial under Code, section 4205 based upon matters having a legitimate bearing upon the controversy, which, owing to adequate reasons, have not been presented.

New Trial: DISCRETION OF COURT. Where the evidence conclusively
4 shows that adjoining lot owners have recognized a certain boundary line for more than ten years, as claimed by defendant, and a verdict for plaintiff is returned establishing a new boundary, denial of a motion for a new trial under Code, section 4205, is an abuse of discretion constituting reversible error.

*Appeal from Lee District Court.*—HON. H. BANK, Judge.

THURSDAY, OCTOBER 29, 1903.

THE plaintiffs own lot 12, in block 163, in the city of Keokuk, and defendant lot 11 adjoining, in the same block. The petition, filed June 14, 1897, alleged that defendant was, and had been for some time, in the wrongful possession of a strip three feet wide and one hundred and forty feet long, along the west side of lot 12, and prayed that she be ejected, and for damages. The answer put plaintiffs on their proof, and averred that defendant's lot was inclosed by buildings and fence, and had been for forty years, and, as so inclosed, was claimed by her because of adverse possession, and plaintiffs' acquiesence therein. A trial was had, and a verdict returned for plaintiffs June 8, 1899. Motion for new trial and in arrest of judgment were overruled, and judgment entered November 4, 1899. An appeal was taken to this court February 19, 1900, and judgment affirmed, on motion, in October term of the same year. On October 29, 1900, the defendant filed her application for new trial, which, on hearing, was dismissed, and she appeals. —*Reversed.*

*J. F. Smith* for appellant.

*R. M. Marshall* and *W. J. Roberts* for appellees.

LADD, J.—Section 4205 of the Code, found in the chapter relating to the recovery of real property, reads: "In cases provided for in this chapter the court, in its

1. NEW trial: when application to be filed.

discretion, may grant a new trial on the application of any party thereto, or those claiming under a party, made at any time within one year after the former trial, although the grounds required for a new trial in other cases are not shown." The period within which application may be made evidently begins from the termination of the trial. Appellee insists that ended with the return of the verdict. If so, the application was filed too late. The Code defines a trial as

"the judicial examination of the issues of an action, whether they be issues of law or of fact." Section 3649. To the trial of the action in this sense the statute refers, and it is not completed until all the issues raised are passed on. The return of the verdict does not conclude the examination of questions of fact even, for it, upon motion, is subject to review by the court until finally approved or set aside. So, too, issues of law are matters of inquiry, and rulings thereon open to modification and change at any time before final judgment. The finding of the jury or a ruling of the court is a step in the investigation, but, so long as these are open to review in the same court, it cannot be said that trial, as defined by statute, has cerminated. Possibly the judgment is not, technically speaking, a part of the trial; but it definitely marks the conclusion of the examination of the issues, and speaks the result. A new trial, defined by section 3755 of the Code as "a re-examination of the issue of fact or some part or portion thereof," differs from the examination of all the issues involved in an action. And a mere trial of fact or of law is included within the latter. In the instant case, hearing of the motions for judgment, for new trial, and in arrest of judgment was a continuance of the examination of the issues raised. When was it ended? Manifestly, at the time inquiry into the rights of the parties ceased, and that was not until the court's final decision. As contended by appellee, only issues raised by the pleadings are intended. Others are merely incidental to these. It is further urged that as section 3777 of the Code authorizes the clerk to enter judgment forthwith upon the return of a verdict, unless otherwise directed, the case should be treated as though that had been done. This provision is directory, merely, and the practice prevails in many parts of the state of not entering judgment until motions for new trial and in arrest of judgment have been.

disposed of. As to whether, when judgment is entered immediately, the period of this statute begins to run from that time, or from the ruling on motion for new trial and in arrest, we are not now concerned. This application was filed within a year from the rulings on the motions and the entry of judgment, and therefore, in any event, in apt time. *Hill v. State*, 41 Tex. 253; 21 Ency. P. & P. 957. See *Butterfield v. Walsh*, 25 Iowa, 263.

II. Appellee insists that as an application for new trial filed two days after verdict, under section 3755 of the Code, was denied, another may not be heard under section

**2. New trial.**

4205. But the two statutes provide for distinct and different proceedings. In the former the application must be filed within three days after verdict; in the latter, within one year after trial. In the former, causes therefor are specified; in the latter the grounds need not be those required for new trial in other cases. The application may be *ex parte*, and notice to the adverse party is not essential. *Buena Vista Co. v. Iowa Falls & S. C. R. Co.*, 55 Iowa, 157. The latter statute applies alone to actions for the recovery of real property, and is to be liberally construed, to the end that its object may be attained. At common law the verdict and judgment in an ejectment case was not conclusive between the parties, as in other actions, and either party might maintain as many new suits as desired, unless restrained by a court of equity through a proceeding in the nature of a bill of peace. This was so for the reason that plaintiff was only a fictitious person, and as the demise, terms, etc., could be laid in many different ways, it could not, from the structure of the record, be made to appear that the second suit was brought between the same parties and upon the same title as the first. Perhaps, also, there was an unwillingness, because of a peculiar regard, under the feudal system, attached to the tenure by which real estate was held, that the question of title should be settled

in one action. *Spence v. McGowan*, 53 Tex. 30. As a new suit might be brought, new trials were uniformly denied in the earlier cases. Later, owing to possible injury from a change of possession of the defeated party, this rule was changed, and new trials awarded as freely in ejectment as in other actions. But the fictions of the common law have been abolished, and procedure for actions of right prescribed by statute. In many of the states a second trial is awarded as a matter of right. In others, like ours, the propriety of a second trial is left to the discretion of the court. But greater latitude is allowed to judicial discretion than in ordinary actions, and new trials may be ordered for reasons which seem insufficient in others. *Newell v. Sanford*, 10 Iowa, 364; *White v. Poorman*, 24 Iowa, 108. Newell, in his work on ejectment (page 819), says that "the application is sometimes considered as an appeal to the equitable discretion of the court to prevent palpable and material wrong." The title to realty, however, still seems to be considered too important, not to say sacred, to permit of final adjustment without a more ample opportunity for investigation than is afforded in passing on that to personal property; and, while a new trial ought not to be granted where ample justice has already been done, an erroneous result should appeal most strongly to the court for correction.

III. The affirmance by the court on motion ought not to be treated as an insurmountable obstacle to the granting of a new trial. It was entered *pro forma* because of appellant's failure to file the printed abstract of record within the period fixed by statute.

3. SAME.

As errors were not assigned, and the jurisdiction of this court in a law action is limited to the consideration of such errors only, there is no ground for saying that the order of affirmance operates as an approval of every ruling made in the course of the trial. To do so would be indulging in a mere fiction, having no foundation in fact. The merits

were not considered. A new judgment was not entered. That of the district court was merely confirmed because of the omission to properly present the record. In a case like this an affirmance differs little, in effect, from a dismissal, in its practical result on the cause of action. True, the right to a second appeal, which would possibly have been retained on dismissal, could not be exercised. The real effect, however, was to leave the judgment of the district court precisely as though no appeal had been taken. Had errors been assigned, and these reviewed by this court, its opinion as to such errors would doubtless have been final. But the statute authorizes a new trial "although the grounds required for a new trial in other cases are not shown"—ground which could not have been reviewed on appeal. The facts constituting such grounds may have arisen or been discovered subsequent to the judgment, and the period of one year is allowed from trial unconditionally, and regardless of whether an appeal has been taken or not. In states where a second trial in ejectment cases is awarded as a matter of right, an appeal from the judgment in the first trial is held not to suspend or waive such right. *Gibson v. Manly*, 15 Ill. 140; *Indiana, B. & W. R. Co. v. McBroom*, 103 Ind. 310 (2. N. E. Rep. 760); *Haseltine v. Simpson*, 61 Wis. 427 (21 N. W. Rep. 299). In *Com. v. McElhaney*, 111 Mass. 439, under a statute authorizing the *nisi prius* court, within a year after the trial, on the application of defendant, to grant a new trial, when it shall appear that justice has not been done, the court declared that a new trial ought to be granted in a capital case after sentence of death passed, and exceptions had been overruled by the Supreme Court. In *State v. Circuit Court*, 71 Wis. 595 (38 N. W. Rep. 192), the Supreme Court of Wisconsin, under a similar statute, reached the same conclusion in a case where a town had been fined for not repairing a bridge, though Orton, J., filed a dissenting opinion in which he insisted

upon the finality of an order of affirmance; and this apparently influenced the court in *Ean v. Chicago, M. & St. P. R. Co.*, 101 Wis. 166 (76 N. W. Rep. 329). In that state a judgment upon affirmance by operation of law becomes the judgment of the Supreme Court, and the thought of the last decision seems to be that as the statute permitting application for new trial on grounds mentioned within one year relate to judgments, distinctively, of the court in which such application may be made, it cannot be entertained after such affirmance. In this state the appeal alone does not affect the judgment of the lower court. *Watson v. Richardson*, 110 Iowa, 698,

There is no doubt but that an affirmance ought to be treated as a finality of all questions before the court, and probably the legislature is without power to make it otherwise. But there appears no tenable ground for denying the legislative power to provide for a hearing, even subsequent to an affirmance, of matters having a legitimate bearing on the controversy, which, owing to adequate reasons, have not been presented. The ground for new trial is quite as likely to be discovered after as before the appeal; and where the affirmance of the appellate court adds nothing to the existing judgment, except by way of confirmation of the action of the trial court, there is no reason for regarding a judgment affirmed as any more sacred than one not appealed from after the period within which an appeal may be taken has expired. In either event it is no more nor less potential than a judgment of the district court. One is final in the same sense that the other is. Under the practice in Michigan the cause is sent back by remittitur to the trial court, and, where errors assigned are reviewed without passing on the merits, a new trial may be granted by the trial court after an affirmance. *Reynolds v. Newaygo Circuit*, 109 Mich. 403 (67 N. W. Rep. 529). Under section 4094 of the Code, a petition to vacate or modify a judgment, based on grounds

enumerated in section 4091, may be filed within one year
after final judgment; and in *Gray v. Coin*, 48 Iowa, 424,
the court seemed to be of the opinion, in construing a
statute materially different, that an appeal would operate
as a waiver of such right.   This was upon the ground that
an appeal admitted the finality of the judgment, and hence
waived the right to prosecute proceedings for a new trial.
Under the present statute the application is permissible
only after the entry of final judgment or order.   But in
*Cook v. Smith*, 58 Iowa, 607, the petition was filed before
the appeal was taken, and it was held that such appeal
did not operate to oust the court of "jurisdiction of the
application during the time limited in the statute."   And
in *Sullivan v. Chicago, R. I. & P. R. Co.*, 119 Iowa, 464,
the appeal from final judgment was consolidated with that
denying new trial; the former being affirmed and the
latter reversed in the same opinion.

Returning to the statute under consideration, it is to
be observed that the only limitation prescribed is that of
time.   Had it been the purpose of the legislature to re-
strict the application to cases in which no appeal had been
taken from the judgment entered on the first trial, this
would doubtless have been mentioned.   As previously re-
marked, the trial court will not be permitted to review
the action of this court, either on errors considered or the
merits, when passed upon, for to this extent its determin-
ation is final.   But, aside from these, we see no impropri-
ety in an inquiry and the awarding of a second trial, on
good cause shown, if thereby justice will be promoted.
Indeed, the manifest purpose of the statute is to safeguard
the investigation of titles to property of a permanent and
enduring character, often doubly valuable because of the
memories and traditions clinging about it, and to avoid,
as far as practicable, any miscarriage of justice through
error, oversight, mistake, misfortune, or other circum-
stance, though not legal ground for new trial in other

actions, and by a re-examination of the issues, whenever
a different result is reasonably probable and apparently
just, more fully vindicate the right, and more certainly
ascertain title in the true owner.

IV.   The abstract of the pleadings and evidence on
the original hearing is made a part of the application for
new trial.   From these the precise issues upon which the
first trial proceeded appear.   The defendant claimed to be the owner of the strip of land
in controversy, and it is distinctly averred in the applica-
tion for new trial that the evidence conclusively showed
the boundary line between the lots to have been as de-
fendant claimed it, and so recognized for nearly forty
years.   Either the twenty-fourth or twenty-eighth assign-
ment of error raised the point that the evidence conclu-
sively established this defense.   The point was well taken.
The engineers made use of the data from the records, the
character of which does not appear.   No account was taken
of monuments, if any there were, nor of the fact that each
lot owner or his grantor had occupied and improved up to
a marked division line for forty years.   No effort was
made to ascertain the original corners or the lines of the
original survey.   On what theory it was assumed that the
block was originally divided into lots of equal size, does
not appear.   Proceeding on this assumption, it was found
that plaintiffs lot lacked three and one-half feet of the
average, and the conclusion reached that defendant must
be in possession of it.   Surveyors should pay more atten-
tion to history than invention.   They are to ascertain the
location of original lines, rather than instruct where these
ought to have been.   It is doubtful whether the testimony,
standing alone, was sufficient to indicate the boundary
line between these lots.   But whether this be so or not,
decisions of this court since the trial are to the effect that
a boundary line, up to which each party has occupied his
lot for more than ten years, marked by buildings and

<span style="margin note">4.  NEW trial: discretion of court.</span>

division fence, cannot be questioned.   *Miller v. Mills Co.*,
111 Iowa, 654; *Klinkner v. Schmidt*, 114 Iowa, 695;
*O'Callaghan v. Whisenand*, 119 Iowa, 566.   On this
ground the application for new trial should have been
granted, and, as the evidence is conclusive, the denial was
an abuse of the court's discretion.—REVERSED.

DEEMER, J.— (dissenting).   I am unable to agree
either to the conclusion or to the reasoning of the majority
in this case, and I especially dissent from the views ex-
pressed in the third division of the opinion.

Reduced to its last analysis, the question is, how
many trials may a defeated party have in this court?
May he take advantage of a statute relating to new trials
in the district court, and have an opinion of this court
superseded and overruled, and the case again reheard,
after one petition for rehearing has been submitted and
overruled?   This application is based upon the same
alleged errors committed by the trial court as on the
original trial from which the former appeal was taken.
Indeed, the abstract on that appeal was attached to, and
made a part of, the application in this case.   The petition
in this case presents no new facts or propositions of law.
It is conceded that the basis of this proceeding is the
alleged errors of the court committed on the original trial,
from which an appeal was taken, which resulted in an
affirmance in this court.   A petition for a rehearing was
filed and overruled, but, nothing daunted, plaintiff pro-
ceeded to file his abstract in the trial court, and to ask
that court to reverse this court because of error committed
on the original trial.   This the trial court refused to do,
and, as I think, properly.   But the majority say that,
notwithstanding we have once affirmed the judgment and
overruled a petition for a rehearing, nevertheless in actions
of this kind there may be a second rehearing on the same
record, because, forsooth, the case was affirmed *pro forma*

and no judgment has been entered here. I had always supposed that a judgment of affirmance here was a finality, no matter what the grounds of the decision. If this tribunal is not a court of last resort, then I have misinterpreted the Constitution. In *Gray v. Coan*, referred to by the majority, it is said: "This court is required by law to pronounce the final judgment in the case. If this were not so, a party could, after a case was affirmed by this court, have a new trial granted below, which would be an unheard-of proceeding." I do not exactly understand what is meant by a *"pro forma* affirmance." A case is either affirmed, reversed, or dismissed by this court. If affirmed, no matter what the ground, the judgment is a finality, and is *res adjudicata* not only of every question presented, but of every one which might have been urged. This is fundamental. See 3 Cyclopedia, pages 494, 495, and cases cited; *Miller v. Bernecker*, 46 Mo. 194; *Finch v. Hollinger*, 46 Iowa, 216; *Adams Co. v. B. & M. R. R.*, 55 Iowa, 94; *Steel v. Long*, (Iowa) 84 N. W. Rep. 677. Herein, as I view it, is the fundamental difficulty with the majority opinion. A judgment of affirmance for the reason that proper steps were not taken to secure a hearing on the merits is conclusive as a former adjudication, and may be pleaded as such, although the decision of this court, if the case could have been heard upon the merits, would have been different. *Trescott v. Barnes*, 51 Iowa, 409. When the judgment of a trial court is affirmed, this court may send the case to the court below to have the same carried into effect, or it may issue the necessary process for this purpose, as the party may require. Code, section 4143. And execution may issue from this court. Code, section 4153. From this it follows that a judgment of affirmance is something more than a mere form. An affirmance may be ordered without prejudice to appellant. *White v. Poorman*, 24 Iowa, 108. But in the absence of such an order the affirmance is conclusive, and it, in effect,

becomes the final judgment in the case. Where a case is affirmed, a mandate or procedendo, as it is called under our procedure, must issue to reinvest the trial court with jurisdiction. *Messenger v. Marsh*, 6 Iowa, 491; 3 Cyclopedia, page 478, and cases cited.

From the earliest history of this court it has been the practice to issue *procedendoes* in cases of affirmance unless a decree is rendered in this court. Indeed, we have universally held that after appeal to this court the trial court loses jurisdiction. *Stillman v. Rosenberg*, 111 Iowa, 369, and cases cited. The appeal operates to give this court jurisdiction until the final word is spoken, and when spoken there is no power either in the legislature or in an inferior tribunal to annul or in any manner impair the final conclusion. A judgment of affirmance on motion is just as sacred and as much *res adjudicata* as if on the merits. I think the majority fail to distinguish the doctrine of *stare decisis* from that of *res adjudicata*. When a case is once adjudicated by the highest tribunal in the state, that should be the end of it, no matter what the reasons for the decision. The reasons given for a particular conclusion only become important when considering the question of *stare decisis*. The majority, as I understand it, admit that, had we passed upon the questions presented by the first appeal, that would have ended the matter. If that be true, the same result should follow an affirmance on motion, under the doctrine of *Trescott v. Barnes* and *Finch v. Hollinger, supra*. My views are so fully expressed by Orton, J., in his dissenting opinion in *State v. Cir. Court*, 71 Wis. 595 (38 N. W. Rep. 192), which was afterwards concurred in by the entire bench in *Ean v. C., M. & St. P. R. R.*, 101 Wis. 166 (76 N. W. Rep. 329,) that I need not do more than refer to that learned exposition of the law, and to the cases therein cited. As illustrating the doctrine prevailing in Illinois, see *Hawley v. Simmons*, 102 Ill. 115; *Smyth v. Neff*, 17 N. E. Rep.

702.. In the case from Indiana cited by the majority, Judge Elliott dissented. The Wisconsin case in 61 Wis. 427 (21 N. W. Rep. 299) is based on a statute expressly authorizing new trials after appeals. See section 3029 of the Revised Statutes of that state. The rule in Wisconsin is well stated in the *Ean Case, supra,* and, for a full collation of authorities, see dissenting opinion of Orton, J., heretofore cited. The section of the statute relied upon by the majority has reference, as I view it, to new trials in the district court, and not to rehearings in this court. The consequences to be feared from the holding of the majority are so clearly pointed out in the opinion of Orton, J., and the reasons for adopting a contrary rule so apparent, that I am impelled to dissent from the conclusions reached. The dangers to be apprehended are also pointed out by Sedgwick & Wait on Trial of Title to Land, sections 608, 609. Even in the old action of ejectment, the doctrine of *res adjudicata* applied when the parties were identical. Newell on Ejectment, pages 809, 810. The majority, in my opinion, overlook or underestimate the effect of a judgment of affirmance by this court, and leave the door open for second appeals and diverse holdings in every case involving title to lands.

For these reasons, I respectfully dissent from the conclusions reached. I am authorized to say that MR. JUSTICE SHERWIN concurs in this dissent.