Bassett v. Henry.

CHAS. C. BASSETT, Respondent, v. LIDE HENRY *et al.*, Executors, etc., Appellants.

Kansas City Court of Appeals, March 4, 1889.

1. **Injunction:** RULE AS TO WHEN JUDGMENT MAY BE ENJOINED. It is a general principle in equity, that facts, which prove it to be against conscience to execute a judgment, and of which the injured party could not avail himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or agents, will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such judgment.

Bassett v. Henry.

2. ———— : APPLICATION OF RULE : CASE ADJUDGED. B. and H., attorneys, entered into an agreement with a township to defend it against certain bonds, in all suits pending or to be brought, on condition that if at any time such bonds should be declared valid the fee was to be refunded. At first the bonds were adjudged invalid (*Harshman v. Bates Co.*, 92 U. S. 569); and B. collected the whole fee and refused to pay H. any part thereof, and H. sued him for half of it. Among other things in defense B. set up his liability to return the money in case of a reversal of the *Harshman case* in any of the then pending suits (to which effect he had given bond on receiving the fee), which defense, being a mere contingency, was disallowed by the supreme court (75 Mo. 89), and H. obtained a final judgment for his part of the fee (22 Mo. App. 667), the enforcement of which judgment B. now seeks to enjoin on the ground that since its rendition the federal supreme court has reversed the *Harshman case* and held the bonds valid; and therefore that B. and H. thereby became bound to return the fee to the township and B. had, in fact, so returned by delivery to said township of four of said bonds with accumulated interest and a small amount of money, which were accepted. *Held* (ELLISON, J., *dissenting*)—

(1) It would be unconscionable and unjust, to permit the enforcement of the judgment, and this is not a case of mere cross-demands but a case where the judgment debtor, B., was charged and forced to account for that which since the rendition of the judgment he has been compelled to give back to the township—and that too in pursuance of H.'s own understanding and solemn agreement.

(2) That the plea of *res adjudicata* cannot defeat plaintiff's equitable right, as this action seeks to stay proceedings on the judgment by setting up an equity independent of it, thereby admitting its validity.

(3) That it is not a case of set-off but to stay the unconscionable enforcement of a judgment, which, in equity and good conscience, has been paid.

(4) Nor will the fact, that B. extinguished the liability of himself and H. to the township by turning in, as payment, bonds which B. had, after H. sued him, purchased at a large discount and had never accounted to H. for any portion of the profits, defeat B.'s equity in this case.

(5) H.'s suit against B. proceeded on the theory that the relation between them was a co-partnership, limited to the one transaction and that B. should pay him one-half the fee collected and he obtained his final judgment on that theory and cannot now come into another court for an accounting.

---

Bassett v. Henry.

---

*Per Ellison, J., dissenting:*

The supreme court having held that B. and H. were partners; and the strict rules governing trustees applying also to partners; it follows that as B. bought the bonds while he was retaining the whole fee and at a large discount, he should only be allowed one-half of what he paid for the bonds and the interest thereon against the judgment he seeks to enjoin.

*Appeal from the Bates Circuit Court.*—Hon. D. A. DeArmond, Judge.

Affirmed.

Statement of the case by the court.

The plaintiff brings this suit to enjoin the collection of a judgment obtained by defendant's testator against him in the circuit court of Bates county, on the fourth day of December, 1883, from which plaintiff, defendant in that action, appealed. Said judgment was affirmed by this court at its March term, 1886. 22 Mo. App. 667. In 1873 the county of Bates was sued in the circuit court of the United States on the interest coupons attached to sundry bonds it had theretofore issued, to pay a subscription of ninety thousand dollars it had, by its county court, made to the capital stock of the Lexington, Lake and Gulf Railroad Company, which subscription was made for and in behalf of Mt. Pleasant township, in said county. After said county had been sued as above stated, to-wit: On the eighteenth day of April, 1873, the plaintiff in this action, and defendant's testator, A. Henry, entered into a contract with said township, by the terms of which they obligated themselves, as attorneys at law, to defend said suit, and all other suits that might be brought on said bonds, issued by Bates county in behalf of said township, as aforesaid. For these services said township agreed to pay them, Bassett & Henry, seven thousand dollars, provided they should succeed in preventing a recovery on said bonds.

In connection with said agreement they executed a bond to said township for fourteen thousand dollars,

conditioned for the faithful discharge of their duties as attorneys in the behalf aforesaid, and for the refunding of said fee, when paid, if they should fail to successfully defend the action on the bonds.

Subsequently, at the October term, 1875, of the United States supreme court, the case of *Harshman v. Bates County*, one of the number Bassett and Henry contracted to defend, was affirmed; the judgment of the lower court having been for the defendant. On the twenty-sixth day of May, 1876, Bassett appeared before the township board of said Mt. Pleasant township, and procured a warrant from said board, on the treasury, to be issued in his favor, for the seven thousand dollars agreed to be paid him and Henry for their services as attorneys, as aforesaid; which warrant was thereafter paid in full to Bassett.

Before said warrant was delivered to him he executed a bond with security to the trustee of Mt. Pleasant township, in the sum of fourteen thousand dollars, conditioned that he would refund to the township said sum of seven thousand dollars if other cases then pending should be adjudged against Bates county.

Bassett refused to pay Henry any part of the amount he received from the township; and on the tenth day of March, 1877, Henry commenced an action against Bassett to recover half of said seven thousand dollars received by the latter. The defendant had judgment in said case, which was by the supreme court reversed and remanded. See 75 Mo. 89. The case was tried the second time in the circuit court of Bates county, the result of which was a judgment in favor of the plaintiff, Henry, for twenty-three hundred and eighty dollars. Three hundred dollars of this, however, was remitted in the appellate court.

From this judgment Bassett appealed, and it was affirmed by this court. 22 Mo. App. 667. He now seeks to enjoin its collection.

It is proper to state here, however, to a fuller under-standing of the facts, that, as a defense to Henry's action for his one-half of the seven thousand dollars, Bassett interposed his possible liability to return the same to the township, which he would be compelled to do if the supreme court of the United States in suits then pending should reverse its ruling had in the *Harshman case* and hold the bonds valid. Bassett, however, was denied this defense in said action at law, of *Henry v. Bassett*, for the reason that it was then a mere contingency, or possibility, and could not be entertained in said action. 75 Mo. 89. However, subsequent to the rendition of final judgment (which is now sought to be enjoined), the supreme court of the United States did overrule its former judgment in the *Harshman case*, and held the said township bonds valid, and thereupon said Bassett and Henry became bound to return said seven thousand dollars.

In the month of March, 188 6, Bassett, as legally bound to do, did return said sev en thousand dollars to the township—said ret urn, or repayment, being made in this wise: Bassett being the owner of some of said township bonds, purchased by him after Henry sued him, negotiated and agreed to settle and did settle with the township, by turning over to said township four of said bonds with interest to October, 1885, with a small amount of cash—all of which aggregate seven thousand dollars, and the same was received by the township in full discharge of the obligations of Bassett and Henry, as hereinbefore referred to.

It is because of this paying back to the township the seven thousand dollars, received by Bassett, and the half of which was adjudged to Henry, that Bassett now asks a court of equity to enjoin the judgment.

Plaintiff Bassett was successful in the circuit court, and the defendants are here on appeal, asking a reversal.

*Wm. Page* and *A. Comingo*, for appellants.

(1) Plaintiff's liability to defendants' testator, for a part of the seven thousand dollars he received from Mt. Pleasant township, cannot be questioned. This matter has been fully adjudicated. They were jointly interested in the contract out of which it was realized, and to that extent were partners in the net proceeds, for half of which, it appears, defendants' testator recovered judgment. *Henry v. Bassett*, 75 Mo. 91 ; *Henry v. Bassett*, 22 Mo. App. 667. (2) The bonds used by plaintiff were purchased at ten cents on the dollar of their face value, including interest, were purchased and used to satisfy the joint liability of defendants' testator and himself, and were so purchased with their joint or partnership funds, or during the time plaintiff was in the exclusive and adverse control and use thereof ; and plaintiff must account for one-half of all the profits he made, or that by the lawful use thereof, while so controlled, he made or might have made, though he invested them in his own name. Having refused so to account, his bill presents no equity ; and it should have been dismissed in the lower court. *Pomeroy v. Benton*, 57 Mo. 541-549, and citations ; *Coddington v. Idell*, 30 N. J. Eq. 540 ; *Washburn v. Washburn*, 23 Vt. 577. (3) The duties, rights and obligations of partners are similar to those that exist between trustees and agents. *Pomeroy v. Benton, supra ; Harrison v. Smith*, 83 Mo. 210, 215 ; *Martin v. Luckswith*, 50 Mo. 58. (4) There is an implied obligation on the part of partners to use the property of the firm, or those to whom it jointly belongs, for the benefit of those whose property it is. One partner cannot speculate with or use the joint funds for his individual benefit. *Brown v. Shackelford*, 53 Mo. 122 ; *Pomeroy v. Benton, supra*.

*Boggess & Moore,* for respondent.

(1) The fifth proposition of appellants involves what is, to our minds, the absurd idea that if Bassett paid a joint debt of himself and the appellants' testator, after the rendition of judgment against him now sought to be enjoined, more than twice as much as the amount of said judgment, yet the plaintiff is also liable to pay the amount of said judgment in addition thereto. If Bassett has paid for appellants' testator, because of his legal liability so to do since the rendition of said judgment (sought to be enjoined) more than the amount of said judgment, then it would be shocking, and simply shocking to every sentiment of honesty and to every known theory of equity to require him to pay the same amount again. (2) Appellants' testator, having elected to sue for money, had and received to his use or for the conversion of a warrant for seven thousand dollars to the half of which he claimed to be entitled, to-wit, thirty-five hundred dollars without regard to profits, if any, that election must be held to be final and conclusive; he, and those claiming under him, must abide that election and its consequences. (3) Mr. Chief Justice MARSHALL, in delivering the opinion of that great court in the case of *Marine Insurance Company of Alexandria v. Hodgson,* 7 Cranch, 332-336, as early as the year 1813, announced the doctrine for which we contend in the following language: "Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact, which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself at law, but was prevented

by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." The proposition itself, emanating from that great source, needs no authority for its support; but for the convenience of the court, we cite a few only of the many cases maintaining the same doctrine. *McJilton v. Love*, 13 Ill. 486; *Lamb v. Anderson*, 1 Chand. ( Wis. ) 224; *Clifton v. Livor*, 24 Ga. 91; *Vathir v. Zane*, 6 Grat. 246; *Devoll v. Scales*, 49 Me. 320.

GILL, J.—After having gone over the entire record of this cause, and read with care the very elaborate statements, arguments and briefs of the eminent counsel on both sides, we feel the material facts may be narrowed to about these: Bassett and Henry, lawyers, agreed to successfully defend Mt. Pleasant township against certain bonds, for a conditional joint fee of seven thousand dollars; that if successful in one suit the township would then pay the seven thousand dollars, but if the bonds were subsequently held valid that these attorneys would return the said seven thousand dollars to the township.

In the first case determined (*Harshman case*) the judgment was for the township, and the seven thousand dollars was thereupon paid to Bassett with a renewed obligation on his part, that, in case the bonds were ultimately held good, he would return said sum to the township. Bassett, refusing to pay any part of this sum to Henry, was sued by Henry, and the judgment now sought to be enjoined was the result. In that suit, among other defenses, Bassett interposed his possible liability to return the money to the township, but the defense was not permitted. 75 Mo. 89.

After the rendition of Henry's judgment against Bassett, wherein Bassett was held to a division of the fee with Henry, the bonds were held valid, and Bassett

was compelled to pay and did pay back to the township the fee received.

Now, under this state of facts, did the trial court, sitting to administer equity, properly enjoin the collection of the Henry judgment?

I.   It is stated as a general principle, in the administration of equity in such cases, "that any facts, which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or agents, will authorize a court of equity to interfere by injunction, to restrain the adverse party from availing himself of such judgment." 2 Story's Eq., sec. 887.   Such interference will not be had, however, on account of error or mistake in judgment of the court of law, "but only upon the ground that the party had some defense against the claim, which has occurred, or first came to his knowledge, since the trial in the court of law, whereby it would be a virtual fraud, in the party recovering at law, now to insist upon enforcing his judgment." 2 Story Eq., sec. 1572; *Marine Ins. Co. v. Hodgson*, 7 Cranch, 336; *Emerson v. Udall*, 13 Verm. 483.

The courts have, on frequent occasions, recognized the duty of courts of equitable cognizance to relieve a judgment debtor from the enforcement of a judgment, when to enforce the same would be against equity and good conscience, and the defense was one that the judgment debtor had never been able to interpose in the action at law.   "A court of equity has jurisdiction to entertain a bill to set aside, or annul, a judgment at law, where a proper state of facts is shown, and where, at law, the defence was inadmissible," quoted from *Lamb v. Anderson*, 1 Chand. (Wis.) 224, see also *Devoll v. Scales*, 49 Me. 300.

In *Collier v. Easton*, 2 Mo. 147, in the opinion of the court the existence of the same doctrine is admitted when it is said "that after the trial at law the party cannot have the aid of a court of equity, *unless* he can impeach the justice of the verdict by facts, or grounds, of which he could not have availed himself," etc., in the trial at law. See also *Matson v. Field*, 10 Mo. 102–3; *Reed's Adm'r v. Hansard*, 37 Mo. 202.

To permit the judgment of *Henry v. Bassett* to be enforced, under the circumstances here presented, would, it seems to us, be most unconscionable and unjust. It is not a case of mere cross-demands, but it is a case where the judgment debtor, Bassett, was charged and forced to account for that which he has since the rendition of the judgment been compelled to return—to give back to the township—*and that, too, in pursuance of Henry's own understanding and solemn agreement.* The identical matter in the possession of Bassett, when the judgment at law was entered, and on account of which Henry obtained said judgment, has been, *by the express agreement of Henry*, returned to Mt. Pleasant township, and shall Henry's representatives be permitted to collect this judgment, in face of the fact that Bassett has done with the seven thousand dollars, just as stipulated and agreed should be done, to-wit, returned the same to the township in the event, which happened, of the unsuccessful termination of the bond suits? Here is presented a very strong case of equitable payment. It is not unfair to place Henry in the position of being present at Bassett's settlement with the township, and consenting, then and there, to the payment made; for, although not present in person, he had, in the inception of the business, solemnly agreed and pledged himself, under his hand and seal, that, in case the litigated cases should be ultimately decided adverse to the township, he and Bassett would repay and return

the said fee to the township—Bassett then, in return- ing the said seven thousand dollars was only conform- ing to the directions of Henry's sealed agreement. Bassett was not, and could not be, allowed this as a defense in Henry's suit; for, as the court held, the contingency might never have happened, and a mere contingent liability was not permitted to be set up in that action. 75 Mo. 89. But at the institution of this injunction suit, brought by Bassett to protect himself from Henry's judgment, that contingency had ripened into a fixed liability, and Bassett was forced to return the seven thousand dollars which he did with the implied consent, too, of Henry. Neither is the plaintiff here denied the assertion of his equitable rights by any plea of *res adjudicata.*

This action in equity to stay proceedings on this judgment at law does not draw into question such judg- ment, or in any way claim a right to revise it. It sets up an equity independent of the judgment, admits the validity of the judgment, but suggests reasons why the party who has obtained it ought not to be allowed to enforce the same, because of equities matured since the said judgment was obtained. *Parker v. Judges*, 12 Wheat. 563.

It is well settled that the judgment of a court of law cannot be disturbed in a court of equity on account of any defense which was tried, or might have been tried, in such action. 13 Verm. 483, and other cases, *supra.* But the matters here alleged and proved by the plaintiff, whereby relief is sought, are matters occuring since the trial and judgment in the suit at law of *Henry v. Bassett.* We do not regard the case of *White, Adm'r, v. Healy*, 54 Mo. 592, as in conflict with the ruling hereinbefore indicated. That was an action at law for money had and received, and defendant sought to interpose a set-off on account of having paid some notes of the deceased after his death, on which

said notes the defendant was security. The set-off was denied, because under the statute of set-off (R. S., sec. 3869) no set-off is allowed in suits brought by administrators, unless the right thereto existed in the defendant at the death of deceased. We have, in the case at bar, a very different state of facts, and invoking, too, the chancery powers of the court, and bound by the rule of no statute. This suit is not one at law for the recovery of money, where defendant seeks to set-off an independent demand, but this is rather an application to a court of equity for that relief which a court of law is powerless to grant. It is not a case of set-off but rather one where relief is sought from an unconscionable enforcement of a judgment, which, in equity and good conscience, has been satisfied.

II. It is further contended by defendant's counsel, because of the fact that plaintiff Bassett extinguished the liability of himself and Henry to the township, by turning in, as payment, bonds of said township, which Bassett had theretofore purchased at a large discount, and that he had never accounted to Henry for any portion of profits on such venture that there is no equity shown in plaintiff's case. We think this position is not well taken. These bonds, so used by Bassett in adjusting the joint liability of Henry and Bassett, were purchased somewhere from 1877 to 1879, and after, it would seem, Henry had brought his suit for his portion of the seven thousand dollars. The attitude of Henry was then, and always has been, that Bassett owed him in money the one-half of this fee and he sought, and acquired a judgment therefor, against Bassett. Henry's position was, and ever has been, that the co-partnership was a limited one, involving the one transaction, that Bassett on getting the fee should pay over to him the one-half thereof; and he, Henry, sought the aid of the courts to require Bassett to respond, and the judgment in Henry's favor was the result of that effort. Now will

Henry be allowed the double relief, first a judgment for the recovery of the money claimed and sued for, and recovered by the action begun in 1877, and, in addition, the right to have Bassett account for profits that Bassett may have made on bonds subsequently purchased? Henry here would be assuming the anomalous attitude of a creditor suing his debtor at law and recovering a money judgment, and at the same time seeking to charge the debtor for account of profits made. By the institution and prosecution of the suit for his portion of the seven thousand dollars, Henry chose his own remedy, his own *forum*, and he cannot be allowed now, after getting his judgment in that suit, to come into another court for an accounting.

There is nothing of extortion, or inequity, shown by the record in this case, in the matter of Bassett's settlement with Mt. Pleasant Township. It is not the case of a payment for a nominal sum of money by one joint obligor of the joint liability, and then calling on his co-obligor for unconscionable contribution, but the testimony shows that the bonds, so used by Bassett in said settlement, were then valid, binding obligations, and such as the township were legally bound to pay. Nor is there any proof showing that such bonds were then worth less than par, the price fixed upon by Bassett and accepted, in settlement, by the township.

Upon a careful review of the whole case, we think the judgment of the circuit court was for the right party, and should be affirmed. SMITH, P. J., concurs; ELLISON, J., dissents.

ELLISON, J., dissenting, said:—

The supreme court (75 Mo. 89) has declared that Bassett and Henry were partners.

Matters at law are all settled against Bassett, and at law he is a judgment debtor to Henry for the full amount of the judgment. But he has come into the

*forum* of equity and prays that all legal technicalities be cast aside and to have such relief granted him as fairness and good conscience will suggest.

The evidence shows that he did not pay back money to the township as a return of the seven thousand dollars' fee which he and Henry had bound themselves to return, but that he turned over in discharge of such obligation four one-thousand dollar bonds of the township, which, at face value, with accrued interest thereon, amounted to seven thousand dollars (less $4.67 which he paid in cash). Bassett bought these bonds, being of the same issue he and Henry were defending for the township, at ten cents on the dollar, for the purpose of turning them into the township in discharge of his obligations to that effect if a liability should accrue thereon. He only paid four hundred dollars in money for them.

In my opinion, one-half of this sum and interest thereon, and one-half the small sum he paid in addition to the bonds, is all that he should be allowed against the judgment he seeks to enjoin by the proceedings now before us.

That Bassett is only entitled to an injunction to the extent of the money he is out strikes me as a proposition apparent by its statement. It may be demonstrated: Suppose, instead of turning in bonds, he had compromised with the township by paying to it, in cash, ten cents on the dollar of the amount of the fee; would he be allowed one hundred cents on the dollar in this proceeding? The contention is that Henry ought not to collect the judgment he has obtained for his half of the fee, the whole of which Bassett had collected, for the reason that since the rendition of the judgment, Bassett had paid the fee back to the township in response to his and Henry's bond to that effect. But the fact is, he has *not* paid it back; he has turned over bonds which the township has accepted in lieu of it;

bonds which he purchased while a partner, for this purpose and when he had the partnership money in his hands.

Suppose when Bassett collected the fee from the township, he had immediately paid Henry's share over to him, and then afterwards having settled with the township, he had sued Henry for the share he had paid him, on the ground that he had been compelled to return the fee ; what would have been the measure of his recovery? Unquestionably it would have been one-half the amount he paid as a settlement with the township. If he settled or compromised at ten per cent., one-half of that sum ; if he settled at one hundred per cent., one-half of that sum.   The rights of the parties in this proceeding are exactly as if the last supposition had transpired in fact.   Bassett paid only four hundred dollars for the bonds which he turned into the township at seven thousand dollars.   One-half, too, of this four hundred dollars, it is fair to assume, was Henry's money, for it was while Bassett had the whole of the seven thousand dollars in his possession that he bought them.   But aside from this, all the bonds of this issue, of which those Bassett bought were a part, though held valid, by a then recent decision of the supreme court of the United States, were at the time of Bassett's settlement with the township, only worth sixty-five cents on the dollar, including accrued interest to October, 1885, and all, except those turned in by Bassett, were at about that time refunded at that rate.   He is thus allowed by his settlement near twenty-five hundred dollars more for the bonds he turned in than they were worth and more than the rate at which the township settled all the others of the same issue.

The case may be stated thus : Bassett and Henry were full and equal partners in this transaction.   In 1876 Bassett collected of their client the full fee due the partnership.   He retained and used the whole of it,

less four hundred dollars paid for the bonds and less other expenses which were allowed him in the judgment, for ten years ; but on account of having paid out four hundred dollars, one-half of which, of course, was for himself, he asks, as a matter of fairness, conscience and equity, that it be made to operate as a payment and satisfaction of a judgment for more than two thousand dollars.

The principle or reason which will sustain the opinion of my brethren would operate as a satisfaction of Henry's judgment, though Bassett had paid but a single dollar in liquidation of his and Henry's obligation to the township, or, indeed, if the township had cancelled the obligation without any payment.

The result of the partnership relation between these parties, which is covered by the strict rules which govern other trustees, they occupying that relation to each other (*Pomeroy v. Benton,* 57 Mo. 531) is that Bassett gets the full fee of seven thousand dollars, less his expense account, and his partner does not get anything. I am not able to concur in the conclusion to which the other judges have arrived.