Wilhite v. Ferry.

JERRY WILHITE *et al.*, Respondents, v. W. F. FERRY
*et al.*, Appellants.

Kansas City Court of Appeals, May 4, 1896.

1. **Judgments:** INJUNCTION RESTRAINING.   Any fact which clearly
proves it to be against good conscience to execute a judgment and of
which the injured party could not avail himself in a court of common
law, justifies an application to restrain the enforcement of a judg-
ment.

2. ———: ———: CURATOR'S BOND.   A judgment on final settlement
was erroneous as against the curator.   His successor brought suit on
his bond and obtained judgment against him and his sureties.   Sub-
sequent thereto, the curator appealed from the judgment on his final
settlement and said judgment was corrected.   *Held*, the sureties in
the bond could enjoin the judgment rendered against them and the
fact that they filed no motion for new trial against said judgment
will not destroy their right to an injunction.

3. **Guardian and Curator:** APPEAL: SURETY. The surety of a curator has no right to appeal from the judgment of a probate court finally settling the accounts of such curator.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*M. T. January* for appellants.

(1) A judgment at law will not be enjoined in equity unless there existed a good defense to the action at law or the defendant in the law action was prevented from making his defense by mistake, surprise, fraud, or unavoidable circumstances. High on Injunctions [2 Ed], p. 111, secs. 165, 166; 1 Black on Judgments, sec. 366. (2) If any negligence is chargeable against petitioner, if it was within his power to have interposed his defense in the action at law and he fails to do so, relief against the judgment can not be granted in equity. *Carolus v. Koch,* 72 Mo. 645; *Bassett v. Henry,* 34 Mo. App. 548. (3) Equity will not enjoin a judgment at law for reasons that have been held bad on motion for new trial. Neither will equity interfere where the legal remedy has not been exhausted by filing a motion for new trial. A motion for new trial filed out of time is no motion. *Matson v. Field & Cathrat,* 10 Mo. 100; *Woodward v. Pike,* 62 N. W. Rep. 230. (4) Sureties on a curator's bond have a right to appeal from a judgment against the curator on final settlement in the probate court. R. S. 1889, secs. 5335 and 285; *Farrar v. Parker,* 3 Allen (Mass.), 556; *Nolan v. Johns,* 108 Mo. 431.

*Burton & Wight, O. H. Hoss,* and *J. B. Johnson* for respondents.

(1) Equity will enjoin the collection of a judgment when its collection would be clearly against good

conscience, when the injured party was prevented from availing himself of his legal defense, without fault or negligence. *Bassett v. Henry*, 34 Mo. App. 548. (2) No negligence can be charged against the petitioners from the fact that McGowan had not taken an appeal from the decision of the probate court on his final settlement until after the judgment was rendered against him and his sureties (these respondents) in the circuit court. *Walker v. Heller*, 90 Ind. 198. The common law does not give the sureties on a curator's bond the right to appeal from a judgment against its curator on his final settlement in the probate court and the statutes have not conferred upon them that right. The right of appeal is purely statutory. *In re Bauer*, 112 Mo. 231; *State ex rel. v. Fowler*, 108 Mo. 465; *Schuster v. Weiss*, 114 Mo. 158. (3) After the probate court had ordered McGowan to pay over, etc., appellants had either of two remedies—suit on the bond or appropriate proceeding in the probate court against these respondents. Now, before any proceeding against them in the probate court, these respondents could not have appealed. *Zinc Co. v. Hesselmeyer*, 50 Mo. 181.

GILL, J.—This is a suit in equity, to enjoin the defendants from enforcing a certain judgment which they obtained against plaintiffs, May 18, 1894. The allegations of the petition were admitted at the trial, save and except the clause, "that said judgment was rendered and procured without any fault or negligence of these plaintiffs," etc. Plaintiffs' counsel have, in a condensed form, set out the conceded facts which we adopt as a fair statement of the case.

It appears that several years ago one Mr. Jordan was appointed curator of the estates of the Blue heirs, and that his bondsmen were R. J. McGowan, C. W. Conrad, and C. H. Eddleman. That when Jordan

died in April, 1892, his estate was insolvent and his securities were also insolvent. That McGowan was appointed his successor as curator and gave as his bondsmen, the present plaintiffs, Wilhite, Duck, and Edwards. That McGowan filed an inventory of the estate of said minors, and instead of charging himself with a claim of $1,902.76 (the amount which Jordan owed the estate) against the estate of Jordan and the securities on his bond, falsely charged himself with that amount of money, when, as a matter of fact, he had not, could not, and never did collect it, except the sum of $390, which sum he collected from the estate of Jordan. The remainder, owing to the admitted insolvency of Jordan's estate, and McGowan, Conrad, and Eddleman, was not and could not be collected.

In August, 1893, McGowan made a settlement in which he still continued to charge himself with this money. In October, 1893, McGowan resigned and W. F. Ferry was appointed his successor, and at the October term of court made a final or turnover settlement in which he sought to correct the false and erroneous charges he had made against himself, in charging himself with the money he had never received. In other words, he sought to get credit for all the moneys he had charged himself with except the $390 he had collected from the Jordan estate, which sum he had fully accounted for. But the probate court refused his request and entered a judgment against him for the full amount of all the moneys he had charged himself with in his inventory, less the amount he had actually collected and paid over to his successor, Ferry. McGowan's securities, the present plaintiffs, were all of this time in total ignorance of all of these facts heretofore mentioned, having no knowledge that he had charged himself with money he had never collected and could not collect, until after he had made his turnover set-

tlement and the probate court had rendered its judgment.    The probate court rendered this judgment at its October term, 1893, which did not adjourn till the twelfth day of December, 1893.

On the twenty-fourth day of January, 1894, Ferry, as curator of the Blue heirs, brought a suit in the circuit court against McGowan, and these plaintiffs as his securities, and on the eighteenth day of May, 1894, recovered a judgment against McGowan and these plaintiffs for the full amount of the judgment of the probate court and interest thereon.

On the twenty-eighth day of May, 1894, and within six months from the final adjournment of the October term of the probate court, McGowan filed his affidavit and bond for appeal from the judgment of the probate court, which appeal was on the same day granted by the said probate court to the circuit court.    At the November term, 1894, of the circuit court, the case was tried *de novo* and judgment was rendered in favor of McGowan, reversing the judgment of the probate court and finding that said McGowan was not indebted in any way to the estate of said heirs, but that he had paid out more money as such curator than he had received.

As a matter of further history of the litigation, it may be well to state that after entering the judgment of May 18, 1894, the trial court sustained a motion for new trial and the cause was brought to this court on the appeal of the plaintiff in that case; and we reversed and remanded the cause, with directions to reinstate the judgment, for the reason that the motion for new trial was not filed within the four days required by the statute.    62 Mo. App. 625.

At the trial below, the plaintiffs had a decree in their favor and were awarded a perpetual injunction against the enforcement of the judgment of May 18, 1894, and defendants appealed.

A review of the facts of this case, a synopsis of which we have given, can but convince the candid mind that plaintiffs have just cause to complain of the threatened enforcement against them of a judgment, the basis of which was a wrongful charge against the former curator, McGowan, for whom they stood as security. Back of both the judgments in question, this fact stands admitted, to wit: McGowan (the curator who succeeded Jordan) wrongfully, if not fraudulently, charged himself with receiving from his predecessor the sum of $1,900, which, with the exception of $390 gotten from dividends out of Jordan's estate, was never received. Jordan died insolvent, and in like financial condition were his bondsmen, McGowan and others. So, then, it would seem that McGowan, either through ignorance, or from a fraudulent intent, set about to have *his* sureties stand good for the delinquency of Jordan, his predecessor. This was clearly a wrong and an outrage upon the plaintiffs in this suit. They had bound themselves to stand good for McGowan's faithful accounting of all moneys he, as curator, might in fact receive. But they never undertook to make good the default of Jordan or his sureties. But it seems McGowan relented, or at least got his eyes open to the wrong he had committed; and about a year after taking charge of the estate of the Blue heirs, he resigned his curatorship, and at final settlement sought to have the probate court correct this error in his accounts and credit him back with the $1,900 wrongfully charged to him. The probate court refused so to do, and entered a judgment against the retiring curator for the full amount, less only the $390 which he had collected from Jordan's estate and paid over to Ferry, his (McGowan's) successor. However, within the time required by law (section 5335, Revised Statutes, 1889) McGowan appealed from this judgment

on final settlement and the cause was taken up to be tried *de novo* in the circuit court, and on a trial there had, in November, 1894, the judgment of the probate court was reversed and McGowan's account was credited with the $1,900 so erroneously and wrongfully charged to it and it was found and declared that McGowan did not fail to account for any money he received, but, in fact, had paid out more than he should.

It is clear, then, on this state of things, that these plaintiffs (who were McGowan's sureties) ought not, in justice, to be called on to pay McGowan's successor anything, for the very good and sufficient reason that McGowan turned over everything he received as curator and the final judgment of the circuit court had acquitted him of any further liability. But shortly after a rendition of this judgment in the probate court, and before McGowan had appealed therefrom, Ferry (who, as already stated, was McGowan's successor) instituted a suit in the circuit court against McGowan's sureties, basing the action on the judgment which had been rendered in the probate court; and this suit went to judgment in May following, a few days before McGowan had appealed from the probate judgment. This action was brought to enjoin an execution on this latter judgment.

In the leading case of *Marine Ins. Co. v. Hodgson*, 7 Cranch, 332, Chief Justice Marshall has declared the true rule governing the interference of the equity courts in the matter of judgments at law. His language has been quite universally adopted by judges and text-writers. He said: "Without attempting to draw any precise line to which courts of equity will advance, and which they can not pass, in restraining parties from availing themselves of judgments obtained at law, it may be safely said that any fact which clearly

proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law * * * will justify an application to a court of chancery." We have here, as already stated, the existence of "that fact which clearly proves it to be against conscience to execute the judgment" complained of; and it is such a defense, too, as the complaining parties could not have availed themselves of at the trial which produced the judgment at law.

The doctrine has been expressed in another form. "Such interference will not be had on account of mere error or mistake in the judgment of a court of law, but only upon the ground that the party had some defense against the claim, which has occurred, or first came to his knowledge, since the trial in the court of law, whereby it would be a virtual fraud in the party recovering at law, now to insist upon enforcing his judgment." *Bassett v. Henry*, 34 Mo. App. 548; 2 Story, Eq., sec. 1542.

The defense here arose *after* the trial and judgment of May 18, 1894, and hence these plaintiffs (defendants there) were powerless to use it to defeat that action. At that time the probate judgment (on which that action was founded) was in full force and effect against McGowan. It had not been reversed, as it was subsequently, by the circuit court.

But it is contended that these plaintiffs were negligent in not appealing from the probate judgment at an earlier date and thereby securing a judgment of reversal in the circuit court, before trial of the case in May, 1894, from which arose the judgment now sought to be enjoined. There are two answers to this contention—one of which, at least, is all sufficient. In the first place, I know of no statute which allows the sureties on a curator's bond to appeal from the judg-

ment of the probate court passing on the curator's account. Defendant's counsel has cited sections 5335 and 285, Revised Statutes, 1889, as authority therefor. The language of these sections do not, in my opinion, justify counsel's position. The first named reads: "Appeals shall be allowed from any final order or judgment of the probate court under this chapter, at any time during the term, or within six months thereafter, in like manner and with the same effect as appeals are allowed in cases of administration of the estate of deceased persons." Section 285, after reciting in what cases of administration appeals may be allowed from the probate court, closes with this clause: "And the right of appeal herein provided for shall extend to any heir, devisee, legatee, creditor, or other person having an interest in the estate under administration."

Adding this part of the administration statute to that relating to guardians and curators, and what language do we find there to authorize the curators' bondsmen to appeal from a judgment against him on his final report? They are not parties to the cause in the proper acceptation of the term; nor do they come under the designation of heirs, devisees, legatees, creditors, or other persons having an interest in the estate. The right of appeal only exists where the statute provides for it. In the absence of express legislation it will not be allowed.

But, concede that these plaintiffs had the right to appeal from the judgment the probate court rendered October 13, 1893, against McGowan, the resigning curator, and how can it be said they were negligent in availing themselves of this right? The statute, as above quoted, in express terms, gave them the right of appeal at any time during the term in which the final order or judgment was entered, or

*within six months thereafter;* that is, six months after the adjournment of the term. There is no pretense that an appeal was not taken within this statutory period. Though not taken during the term, the appeal was yet perfected within the six months. The appeal was taken within the time required by law and that surely was not negligence.

Neither is there any merit in the claim that these plaintiffs lost their right to attack the judgment of May 18, 1894, because they failed to file a motion for a new trial. In answer to this, it is sufficient to say that such a motion (filed within four days as the statute required) would have been unavailing, since within that four days no new matter had appeared as a defense —there had been no change since the rendition of the judgment on May 18, 1894. The appeal from the probate judgment was not taken till ten days after the judgment of May 18, 1894, and hence the motion for new trial could not have been based on the then pendency of an appeal.

The decree here, enjoining the collection of the judgment in question, is clearly right and will be affirmed. All concur.