ENGLER, Appellant, v. KNOBLAUGH, Respondent.

St. Louis Court of Appeals, April 28, 1908.

1. **HIGHWAYS: Judgment of County Court: Maintaining Fence.**
   A county court in opening a private road has no authority to
   render a judgment binding the petitioner for the road to con-
   struct and maintain a fence to protect the owner through
   whose land the road will run, it should include in the damages
   awarded to the owner the expense of erecting such fence.

2. ———: ———: ———: **Irregularity.** Where the clerk of a
   county court, in entering the judgment of that court upon an

131 App.—31

award of damages to an owner through whose land a road was opened, by mistake had the judgment state that the expense of erecting a fence was included in the amount awarded, such mistake was an irregularity which could not be corrected in a separate suit by a court of equity.

3. JUDGMENTS: Collateral Attack: Judgment of County Court. In an action for the penalty provided in section 9466, Revised Statutes 1899, for failure to open a road, brought by the petitioner in whose favor a judgment had been rendered ordering the road opened through the land of the defendant, a defense attacking the judgment on the ground that through accident or mistake the clerk of the court had entered a judgment which in fact was never rendered, was a direct and not a collateral attack, and the defendant might in his answer obtain relief against the enforcement of such apparent judgment as well as by petition to restrain its enforcement.

4. ———: Judgment of County Court: Accident and Mistake. Where a county court rendered a judgment opening a road, at the instance of a petitioner, through the land of another, and the clerk failed to enter the judgment as rendered but entered a judgment which was in fact not rendered, the owner through whose land the road was ordered could restrain the enforcement of the judgment as entered on the ground that the entry was by accident or mistake, although the judgment as actually rendered was one which the county court had no authority to render.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*H. H. Bloss* for appellant.

(1) The judgment of the county court was not subject to collateral attack. No one but the court that rendered the judgment had power to set it aside. Johnson v. Realty Co., 167 Mo. 325; State ex rel. v. Bradford, 156 Mo. 457; Brown v. Oppleman, 83 Mo. App. 79; Bradford v. Sikes, 168 Mo. 8. (2) A court of equity, before it has authority to set aside the judgment of another court, must be satisfied that there was fraud in the very procurement of the judgment; mere

irregularity or error is not sufficient to vest it with jurisdiction. Railroad v. Warden, 73 Mo. App. 122; Chrisman v. Divina, 141 Mo. 122; Davis v. Wade, 68 Mo. App. 640; Wyman v. Hardwicke, 52 Mo. App. 621.

*McPherson & Hilpirt* for respondent.

Plaintiff's second assignment of error is a complaint that the court should not have entertained jurisdiction of the matter pleaded in defendant's answer because the same presents a collateral attack of the judgment of the county court in the road proceeding. A void judgment may be collaterally attacked. Hendrix v. Hendrix, 103 Mo. App. 40; Caffery v. Coal and Mining Co., 95 Mo. App. 174; Howard v. Thornton, 50 Mo. 291; Hope v. Blair, 105 Mo. 85; Hiles v. Rule, 121 Mo. 248; Brown v. Woody, 64 Mo. 548; Adams v. Cowles, 95 Mo. 501. The attack which the respondent makes on the judgment rendered in the county court however is not a collateral but a direct attack. Cundet v. Teague, 46 Tex. 475; Brown v. Parker, 28 Wis. 21; Stowell v. Eldred, 26 Wis. 504.

GOODE, J.—This action is based on section 9466 of the Revised Statutes of 1899. Said section provides for a penalty of five dollars a day to be recovered in an action of debt, by any party in whose favor judgment has been given for a private road over the land of another, from the owner of the land, for each day the road remains unopened after the date it is ordered opened. The penalties sued for amount to $255 for the period the road was kept closed subsequent to December 6, 1906, the date on which it was to be opened according to the order of the court, to the date of the filing of the petition in the present action, February 6, 1907. The like penalty per diem is prayed for each day after the last date until defendant opens the road. In a proceeding instituted by appellant in the county court of Lawrence county, for the establishment of a private

road over the land of respondent, the commissioners appointed to assess damages reported respondent's damages at $50, without charging any part of the sum to fencing respondent might be compelled to build in consequence of the opening of the road. In this respect the report did not conform to section 9461 of the statutes, which regulates the reports of commissioners in such cases. Respondent was unwilling to accept said sum in full for the damages he would sustain from opening the road. He filed no written objection or exception to the report of the commissioners, but objected orally in open court. A colloquy regarding his objection ensued between him and the judges of the county court, and it was finally agreed he would not appeal from an order to open the road, if the order allowed him the fifty dollars assessed by the commissioners as damages and contained a condition that appellant should construct and forever maintain the fencing made necessary by the road. The county court rendered judgment for the opening of the road on those conditions; but in entering the judgment the clerk omitted from the entry part of it i. e., the condition annexed by the court that appellant should build and maintain whatever fencing was made necessary. The entry was also erroneous in reciting the commissioners in their report had found respondent's damages as follows:

"That the damages of the owner of said land, viz: John J. Knoblaugh, on account of the establishment of said road and the erection of a three-wire fence on the east side of said road, one being now erected on the west side, will be the sum of fifty dollars, and the said John Engler having paid said sum of fifty dollars, to the treasurer of Lawrence county for the use of the owner of said land," etc.

In truth the commissioners reported nothing about the fencing and assessed nothing in respondent's favor for the erection of a fence; but the whole sum allowed

Engler v. Knoblaugh.

as damages was for the strip of land one rod wide and a quarter of a mile long which would be taken for the road. After the filing of the report appellant deposited fifty dollars with the clerk. He was not present in person or by attorney when the judgment to open the road was given, and is not shown to have known of the condition annexed to the judgment regarding the fencing. His attorney, who lived elsewhere, drove to the county seat with a form for the entry of the judgment a day or two after it was rendered, gave the form to the clerk of the county court and said official wrote the record in accordance with the form. Appellant's attorney acted innocently in furnishing a form for the entry which showed a judgment different from the one actually rendered, as he was unaware any condition was attached to the opening of the road except the payment by his client of the damages assessed by the commissioners. In defense of the present action the facts are set up in the answer substantially as we have stated them, except fraud is charged against appellant in procuring the erroneous entry by the clerk. Respondent's conduct in not opening the road as ordered is explained and sought to be justified on the ground no such judgment as the record showed was given against him, which false judgment appellant, nevertheless, insisted on as binding respondent to open the road through the latter's farm and as not binding appellant to build and maintain the fencing which would be required to inclose the farm. It should be stated the judgment of the county court allowed respondent four months after its date in which to open the road. The answer says the error in the record did not become known to respondent until after he had accepted the damages awarded and when it was too late to have the same corrected by the county court or to take an appeal, and that it would be unconscionable and inequitable to permit appellant, in view of the foregoing facts, to recover

the penalties sued for, and the prayer of respondent is appellant be enjoined and restrained from suing for the penalties given by the statute for failure to open the road and said judgment be vacated, set aside and for naught held.   Respondent tendered and offered to pay into court the sum of fifty dollars which had been paid previously by appellant to the clerk and received by respondent as damages.   The evidence conclusively proves the judgment entered by the clerk of the county court was not the one rendered by the court.   Each of the judges of said court so testified as did other witnesses; and all the witnesses agreed an order or condition that appellant should build and forever maintain the fencing needed to inclose respondent's land, was part of the judgment.   On proof of these facts the circuit court treated the answer as in the nature of a cross-bill in equity, found its allegations to be substantially true, and that thereafter appellant had induced the clerk of the county court to enter an entirely different judgment from the one pronounced, by which erroneous entry it was made to appear said court had adjudged respondent should erect the fencing; that the said mistake in entering a judgment different from the one pronounced, was injurious to respondent and subjected him to harassing suits and penalties. The learned circuit judge further found respondent was ignorant of the error in the entry of the judgment until it was too late to correct the same by motion, appeal or otherwise, and had no remedy at law by which to protect himself against the consequences of the false record. Wherefore the court adjudged and decreed appellant be prohibited from prosecuting the present action for penalties against respondent, and as the latter had paid into court the damages accepted by him before he learned of the error in the judgment, it was ordered the same be paid by the clerk of the court to appellant.   The only minute of the judgment on the books or papers

of the county court except the erroneous entry, is in the clerk's minute book and is in the following form: "The petition of John Engler for private road; ordered that damages be paid into treasury and road be opened in four months."

Before taking up the principal question in the case, we will notice the course of the proceedings in the county court for the opening of the road, which was, to say the least, very irregular.    No objection in writing to the award of the commissioners was preferred by respondent, but he protested orally and threatened to appeal from a confirmation of the report.    The statutes do not say objections must be in writing, but this would be the orderly method.    If it be allowed the county court may act in such a case on an oral objection to the report of commissioners, the question is: what action should be taken, and the answer is plain; for section 9464 says, if a person through whose land the road passes objects on account of the damages awarded him, an issue shall be made up in the county court, a jury sworn to determine the amount of damages to which he is entitled, and judgment given in conformity to the finding of the jury.    This course was not pursued, but, instead, after a wrangle with respondent, the county court, in order to appease him and prevent an appeal, gave judgment establishing the road as described in the report of the commissioners; that respondent have and recover the fifty dollars paid by appellant to his use; that the latter should construct and forever maintain the fencing made necessary by the road, and respondent should have four months from the date of the judgment to gather his crops before opening the road.    The statutes relating to the opening of private roads, nowhere authorize a judgment requiring petitioners for a road to construct and maintain fencing to inclose the land of some proprietor through whose farm the road will run.    On the con-

trary it is provided in section 9461, the commissioners, after marking out the road so as to be as convenient and do as little injury as practicable to persons whose lands are affected, shall make a report to the county court stating the termini, course, distance and width of the proposed road and assessing "the items of damages sustained by each person through whose land the proposed road passes, including the erection of fences and the kind of fence to be erected, if the land is already enclosed, and in the opinion of the commissioners, the location of the road makes the erection of a fence or fences necessary." That language imports reimbursement to a proprietor whose land may need a new fence in consequence of the opening of the road, of the expense he is put to in building the fence, and, of course, that it shall be built by him. The next section (9462) says if objections are made to the report of the commissioners and the proceedings are regular, the county court shall order the road established according to their report and render judgment against the petitioner and in favor of each owner of real estate affected, for the amount of damages assessed by the commissioners, and the petitioner shall pay the amount to the county treasurer for the use of the persons entitled. We find no authority for a judgment by the county court binding a petitioner to construct and forever maintain a fence, when one is required to protect an owner through whose land the road will run.

Besides omitting from the entry the part of the judgment relating to fencing, the clerk committed yet another misprision. In recording the judgment he inserted a recital importing the commissioners had taken into consideration the expense to respondent of erecting a fence along the road, and had included said expense as part of the fifty dollars awarded for damages; whereas the report of the commissioners said nothing about fencing and assessed the fifty dollars as the value

of the ground taken for the road. The latter misprision of the clerk is, we think, an irregularity which a court of equity could not correct in a separate suit. [1 Black, Judgments (2 Ed.), sec. 367; Life Ins. Co. v. Bangs, 103 U. S. 780.]

The judgment given by the county court, in so far as it required appellant to build and maintain the fencing, was unauthorized and highly irregular, if not void, and the judgment shown by the record was never given. The evidence on this point is satisfactory and the question for decision is whether or not appellant can be restrained in the present action, from taking advantage of the false entry. The situation in which respondent is placed by the state of the record in the county court, appeals strongly to the conscience of a court of equity, for it is palpable if the appellant is permitted to succeed in his action, he will recover heavy penalties to which, in right and justice, he has not the slightest claim, and respondent will be punished and perhaps ruined in consequence of an error for which he is not to blame. He is without remedy at law and must be relieved in equity, if at all—a circumstance which, of course, largely controls a court in determining whether or not it may grant equitable relief in a particular cause. For appellant it is argued the defense of respondent is a collateral attack on the judgment of the county court, and, therefore, untenable. The defense is not, in essence, an attack, direct or indirect, on the judgment pronounced by the county court, but is an effort to restrain appellant from taking advantage of an alleged judgment which never was rendered, but appears to have been in consequence of a misprision of the clerk of the court. And if in legal contemplation, the answer attacks the judgment, the reply to the argument for appellant is that a proceeding lies in equity, in proper limits, to restrain the judgment of a court of law which was procured by fraud, or given through

accident or mistake, and such a proceeding is a direct and not a collateral attack—is one of the common methods of direct attack. [Van Fleet, Coll. Att., sec. 2; Harmon v. Moore, 112 Ind. 221, 227; Pope v. Harrison, 84 Tenn. 82, 90.] Some plausibility is lent to the argument that this is a collateral attack by the error of the record being pleaded in defense of an action on the judgment. But under our system of practice, a party may avail himself in his answer of any defense, either legal or equitable. to an action; and may ask in his answer affirmative relief of an equitable character against the contract or supposed cause of action the plaintiff is asserting. [Crowder v. Searcy, 103 Mo. 97, 15 S. W. 346; Swope v. Weller, 119 Mo. 556, 25 S. W. 204.] If an answer of this kind is filed, it is in the nature of a cross-bill in equity [see Story, Eq. Pl. (10 Ed.), secs. 389, 391], and though we have not found a precedent, we can think of no reason why relief against the enforcement of an apparent judgment never rendered, but entered of record through the misprision of the clerk of a court, may not be invoked by answer in a suit on the judgment, as well as by petition to restrain its enforcement. To grant relief on such an answer cannot prejudice the party suing on the spurious judgment, and will avoid circuity of procedure. Cross-bills, or bills in the nature of cross-bills, are allowed in chancery for the cancellation of contracts sued on in the original bill, when they show good ground for cancellation; as that the contract was obtained by fraud or mistake. [Story, Eq. Pl. (10 Ed.), sec. 391; 1 Daniel, Chan. Pr., 513.] We decide, therefore, the relief respondent asks may be sought by answer if it can be by petition, and will take up the inquiry of whether a petition will lie to restrain the enforcement of an alleged judgment never rendered but spread on the records of a court by mistake.

One essential condition of relief in such a case, as

in all cases to restrain legal proceedings, is that the party asking it shall show he was himself free from negligence in respect of the erroneous entry.   [Head v. Pitzer, 1 Mo. 548.]    This condition is satisfied in the present case.    It does not appear respondent was represented by an attorney in the proceedings to open the road, and it is certain he was not to blame for the false entry as he was not bound to see the clerk kept a correct record.   [Henry v. Seager, 80 Ill. App. 172.]

As much cannot be said for appellant; for though no actual fraud was proved, it was shown his attorney, who was not present when judgment was rendered, prepared a form for the record without acquainting himself with what judgment had been given.    This laxity of the attorney, combined with the carelessness of the clerk, was the cause of the erroneous entry.    Much stress is laid on the failure to prove positive fraud; and it is true the answer charges fraud; but though the testimony, all of which went in without objection, falls short of proving fraud, it establishes a clear case of accident or mistake, imputable to no want of care on the part of respondent, but rather to the negligence of the clerk and appellant's attorney.    The court below found appellant procured the erroneous entry without finding he fraudulently procured it.    No contention was made in the motion for new trial that the relief granted was outside the scope of the answer, nor was any question raised during the trial of a variance between the proof and the answer.    In view of those facts the judgment ought not to be reversed and a new trial directed because the erroneous entry appears to have occurred through inadvertence instead of fraud.

The case seems to fall under the ancient head of "Accident," as that word is used in equity jurisprudence, rather than under the head of "Mistake," a term more applicable, in its technical sense, to suits wherein a complainant solicits relief against a mischievous act of

his own performed from a misapprehension of some fact. In the case at bar the error in recording the judgment was not due to respondent's mistake, but he was the victim of it. Accident is known in equity as an unforeseen occurrence affecting a person injuriously and not due to his own negligence. [Smith's Equity (14 Ed.), 44; 1 Story's Eq. (13 Ed.), sec. 78; Bayard v. Norris, 5 Gill. 468; Byrne v. Edmonds, 24 Gratt. 200, 210.] It is of no practical importance whether the case falls under the head of Accident or of Mistake, for equity relieves against both. The chancery reports are replete with instances in which, to use the language of Story, the consequences of unforeseen losses, misfortunes, acts and omissions, not dissimilar in character to the incidents of the present case, called forth equitable remedies. That misprisions and mistakes in court proceedings, not of a judicial character, will be relieved against in equity, the commentators on said branch of the law, agree. [2 Pomeroy, Eq. Jur. (3 Ed.), sec. 781; 6 Id., sec. 660; 1 Story (13 Ed.), sec. 166; Willard, Equity, pp. 77, 79.] A writer on the law of Judgments says that when through fraud, accident or mistake, a judgment has been entered for an amount or on a condition not intended, equity will give relief on clear and satisfying proof. [1 Black, Judgments (2 Ed.), sec. 367.] We have found cases wherein erroneous entries in court records, judgment entries and others, have been regarded as ground for staying the enforcement of the judgment as recorded, or for correcting other inaccuracies so the record would speak the truth. Even judicial mistakes occurring from a court being misled about a fact, and pronouncing a judgment which otherwise would not have been given, have been corrected. We need not undertake to define the conditions under which relief will be granted in cases of the latter character. Instances where courts of equity interposed against non-judicial mistakes, which happen-

ed in the course of judicial proceedings from the misprisions of clerks or other officers and persons, are apt precedents on the point in hand and most of the following cases deal with such matters.    [Smith v. Wallace, 1 Wash. (Va.) 254; Colwell v. Warner, 36 Conn. 224; Byrne v. Edmonds, 23 Gratt. 200; Smith v. Butler, 11 Ore. 46; Gump's Appeal, 66 Pa. 476; Katz v. Moore, 13 Md. 566; Waldron v. Letson, 15 N. J. Eq. 126; Loss v. Obry, 23 N. J. Eq. 52; Wardlaw v. Wardlaw, 50 Ga. 544; Gwinn v. Newton, 8 Humph. (Tenn.) 710; Murphy v. Johnson, 107 Tenn. 552; Palmer v. Belhand, 66 Ill. 529; Chapman v. Hurd, 67 Ill. 234; Henry v. Seagar, 80 Ill. App. 172; Barthell v. Roderick, 34 Iowa 517.] Those decisions fully support the proposition that respondent is entitled to relief against the enforcement of the alleged judgment as it appears on the record of the county court.    We find a few cases to the contrary and holding equity is powerless in such a contingency. [Bank v. Patterson, 8 Humph. 363; Bank v. Young, 2 Ind. 171; Cooper v. Butterfield, 4 Ind. 423.]    It should be said that in the case last cited, the court recognized the right of equity to interfere in a grave emergency produced by an erroneous entry of judgment; and the present case presents an instance of such an emergency, probably of enough gravity to meet the requirements of the opinion.    The general doctrine which governs relief against judgments due to fraud, accident or mistake, was declared by Chief Justice MARSHALL in Marine Ins. Co. v. Hodgson, 7 Cranch 336, in terms which have been generaly approved and followed, i. e., any fact which clearly proves it to be against conscience to execute the judgment, and of which the injured party could not have availed himself at law; or of which he might have availed himself at law but was prevented by fraud or accident, unmixed with fault on his part, will justify application to a court of equity.    [Bassett v. Henry, 34 Mo. App. 548; White v. Ferry, 66 Mo. App. 453;

Davis v. Staples, 45 Mo. 567.] Some of the cases we have cited are enough like the one at bar to involve the very point of law at issue. For instance, Smith v. Wallace, 1 Wash. (Va.) 254, in which the clerk of a court had, under a mistake of fact, entered a plea for a sheriff in a certain case which resulted in a judgment afterwards going against the sheriff. It was held as the law court could have corrected the mistake if attention had been called to it in time, it would be strange if so palpable an error could not afterwards be changed by a court of equity, whose peculiar province it is to grant relief in such cases. In Colwell v. Warner, 36 Conn. 224, the suit was to enable the complainant, a mortgagor, to redeem the mortgaged premises which had been sold under a decree of foreclosure. The decree was entered by agreement on the understanding it should contain a clause limiting the mortgagor's right to redeem to a period ending May 1, 1864. In entering the decree, from accident or mistake, this proviso was not recorded, but a blank was left therefor by the clerk and never filled. In answer to the suit to redeem, the purchaser at the foreclosure sale set up these facts and insisted the complainant was deprived of his equity of redemption by failing to exercise it in the time limited in the judgment as pronounced. The court found the allegations of the answer to be true, and not only denied the right to redeem, which otherwise the complainant would have enjoyed, but amended the decree in conformity to the answer. Perhaps the most striking case in the books is Byrne v. Edmonds, 23 Gratt. 200. The Supreme Court of Appeals of Virginia had been led into entering a judgment which deprived an annuitant of the annuity devised to her in a will. The error was due to a misprint in the record which was before the court when it construed the will. Some years afterwards a suit in equity was filed in a court of first instance to correct this decree of the Supreme Court of Appeals, and the

accident which caused it having been clearly established,. the decree was corrected by the inferior court and judgment entered in a large sum for arrears of annuity. The right of the lower court to do this was upheld on appeal by the Supreme Court of Appeals. Not less pertinent to the case in hand are several of the other decisions. we have collated.

But it is insisted the record of the judgment of the county court imports absolute verity and can only be impeached by some matter of record contained in the judgment roll. This is true when an amendment at. law is sought. [Belkin v. Rhodes, 76 Mo. 643.] Equity always has accepted parol evidence in certain cases of fraud, accident or mistake, but requires it to be cogent. and convincing before it will suffice for a decree to restrain a judgment. [Davison v. Hough, 165 Mo. 561, 574, 65 S. W. 731; Smith v. Butler, 11 Ore. 46; Gump's Appeal, 66 Pa. l. c. 478; Insurance Co. v. Chichocky, 94 Ill. App. 168, 170.] In the case at bar the record of the county court cannot be corrected to recite the judgment actually pronounced, because we consider that judgment contrary to the statutes. But as the one recorded was not rendered, its enforcement ought to be enjoined. The judgment of the circuit court went no further than to enjoin it and will be affirmed. All concur.